## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KYLE ZAK, individually and on behalf of all others similarly situated, | Case No. 17-cv-2928 |
| *Plaintiff,* | |
| *v.* | |
| BOSE CORP., a Delaware corporation, | |
| *Defendant.* | |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kyle Zak ("Zak" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Bose Corp. ("Bose" or "Defendant") for secretly collecting, transmitting, and disclosing its customers' private music and audio selections to third parties, including a data mining company. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant Bose manufactures and sells high-end wireless headphones and speakers. To fully operate its wireless products, customers must download Defendant's "Bose Connect" mobile application from the Apple App or Google Play stores and install it on their smartphones. With Bose Connect, customers can "pair" their smartphones with their Bose wireless products, which allows them to access and control their settings and features.

2.      Unbeknownst to its customers, however, Defendant designed Bose Connect to (i) collect and record the titles of the music and audio files its customers choose to play through their Bose wireless products and (ii) transmit such data along with other personal identifiers to third-parties—including a data miner—without its customers' knowledge or consent.

3.      Though the data collected from its customers' smartphones is undoubtedly valuable to the company, Defendant's conduct demonstrates a wholesale disregard for consumer privacy rights and violates numerous state and federal laws.

4.      Indeed, one's personal audio selections – including music, radio broadcast, Podcast, and lecture choices – provide an incredible amount of insight into his or her personality, behavior, political views, and personal identity. In fact, numerous scientific studies show that musical preferences reflect explicit characteristics such as age, personality, and values, and can likely even be used to identify people with autism spectrum conditions.[1] And that's just a small sampling of what can be learned from one's music preferences. When it comes other types of audio tracks, the personality, values, likes, dislikes, and preferences of the listener are more self-evident. For example, a person that listens to Muslim prayer services through his headphones or speakers is very likely a Muslim, a person that listens to the Ashamed, Confused, And In the Closet Podcast is very likely a homosexual in need of a support system, and a person that listens to The Body's HIV/AIDS Podcast is very likely an individual that has been diagnosed and is living with HIV or AIDS. None of Defendant's customers could have ever anticipated that these types of music and audio selections would be recorded and sent to, of all people, a third party data miner for analysis.

5.      As such, Plaintiff brings this suit individually and on behalf of all others similarly situated and seeks (i) an injunction prohibiting Bose from collecting, transmitting, and disclosing consumers' music and audio selections, (ii) actual and statutory damages arising from the invasion of their privacy, and (iii) actual damages arising from their purchase of the Bose

---

[1]  Greenberg DM, Baron-Cohen S, Stillwell DJ, Kosinski M, Rentfrow PJ
 (2015) Musical Preferences are Linked to Cognitive Styles. PLoS ONE 10(7): e0131151.
https://doi.org/10.1371/journal.pone.0131151.

Wireless Products, including the return of the purchase price of the product and disgorgement of profits.

## PARTIES

6.      Plaintiff Kyle Zak is a natural person and a citizen of the State of Illinois.

7.      Defendant Bose Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at The Mountain, Framingham, Massachusetts 01701.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claim under the Wiretap Act, 18 U.S.C. § 2510, a federal statute, and supplemental jurisdiction over Plaintiff's state law claims because they are so related to Plaintiff's federal claim that they form part of the same case or controversy under Article III of the United States Constitution. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9.      This Court has personal jurisdiction over Defendant because it conducts business in the State of Illinois and because the events giving rise to this lawsuit occurred, in substantial part, in the State of Illinois.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred, in substantial part, in this District and Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

### *A Brief Overview of Defendant Bose and The Bose Connect App*

11.     In 2016, Bose introduced a new feature for some of its products that enabled customers to remotely control certain Bose headphones and speakers from their smartphones, including the QuietComfort 35, SoundSport Wireless, Sound Sport Pulse Wireless, QuietControl 30, SoundLink Around-Ear Wireless Headphones II, and SoundLink Color II ("Bose Wireless Products").

12.     Bose customers could download Defendant's proprietary Bose Connect app from the Apple App Store or the Google Play Store and install it on their smartphones to take advantage of this new remote control feature.

13.     Once downloaded, the Bose Connect app allows customers to "pair" (i.e., connect) their Bose Wireless Products to their smartphones using a Bluetooth connection, and access essential product functionality. Specifically, through the Bose Connect app, customers can (i) download and install firmware updates to the Bose Wireless Products, (ii) manage the connections between the Bose Wireless Products and mobile devices, (iii) adjust the Bose Wireless Products' noise cancellation settings, (iv) customize the Bose Wireless Products' "Auto-Off" settings (for purposes of conserving the product's battery life), and (v) share music between two Bose Wireless Products.[2]

14.     Users can utilize the Bose Connect app to pause, resume, rewind, and skip songs already playing on their smartphones. The Bose Connect app is not a music player like the iTunes or Podcast players found on Apple devices—it is simply a companion app that allows customers to remotely control their Bose Wireless Products.

---

[2]   *Bose Connect on the App Store*, https://itunes.apple.com/us/app/bose-connect/id1046510029 (last visited April 18, 2017).

4

15. Defendant advertised the Bose Connect app functionality on the outside packaging of all Bose Wireless Products. For instance, the packaging of its SoundSport wireless headphones states in multiple languages: "[t]he Bose Connect app unlocks current and future headphone features. Download now."

16. Likewise, Defendant touts the functionality Bose Connect on its website, and invites consumers to download the app to "get the most out of your headphones." Defendant explains that Bose Connect "makes connecting and switching between devices easier than ever. It also provides product tips and lets you personalize your settings." *See* Figure 1.



(**Figure 1.**)[3]

17. Defendant also encourages its customers to register their Bose Wireless Products with Bose. Registered product owners will receive "confirmation of ownership" and "important updates for products."[4] During product registration, consumers provide their Bose Wireless Product's serial number, full name, email address, and phone number.

---

[3] *QC35 Wireless Noise Cancelling Headphones | Bose*,
https://www.bose.com/en_us/products/headphones/over_ear_headphones/quietcomfort-35-wireless.html (last visited April 18, 2017).
[4] *Product registration*, https://www.bose.com/en_us/support/product_registration.html (last visited April 18, 2017).

*Defendant Designed the Bose Connect App to Secretly Collect Consumers' Usage Data*

18.     As described above, customers must download and install Bose Connect to take advantage of the Bose Wireless Products' features and functions. Yet, Bose fails to notify or warn customers that Bose Connect monitors and collects—in real time—the music and audio tracks played through their Bose Wireless Products. Nor does Bose disclose that it transmits the collected listening data to third parties.

19.     Indeed, Defendant programmed its Bose Connect app to continuously record the contents of the electronic communications that users send to their Bose Wireless Products from their smartphones, including the names of the music and audio tracks they select to play along with the corresponding artist and album information, together with the Bose Wireless Product's serial numbers (collectively, "Media Information").

20.     As mentioned above, Bose solicits registration information (name and email address) and collects that information with the product's serial number. And by collecting the Bose Wireless Products' serial numbers along with Media Information, Bose is able to link the Media Information to any individual that has registered or will register their products, thus enabling Bose to create detailed profiles about its users and their music listening histories and habits.

21.     To collect customers' Media Information, Defendant designed and programmed Bose Connect to continuously and contemporaneously intercept the content of electronic communications that customers send to their Bose Wireless Products from their smartphones, such as operational instructions regarding the skipping and rewinding audio tracks and their corresponding titles. In other words, when a user interacted with Bose Connect to change their audio track, Defendant intercepted the content of those electronic communications.

22.     Defendant also intentionally designed and programmed its Bose Connect app to automatically disclose and transmit its customers' Media Information to third party companies, including a data miner called Segment.io, Inc. ("Segment.io").

23.     According to its homepage, Segment.io is a sophisticated data mining and analysis company that can be used to "Collect all of your customer data and send it anywhere." *See* Figure 2.



(**Figure 2.**)[5]

24.     The music and audio tracks that people listen to (i.e., Media Information) reveal sensitive information about themselves that suggests their politics, religious views, thoughts, sentiments, and emotions. In other words, knowing what music, radio broadcasts, lectures, and Podcasts a person chooses to listen to is enough to make accurate judgments and predictions about their personalities and behaviors.[6]

---

[5]  *Analytics API and Customer Data Platform | Segment*, https://segment.com/ (last visited April 18, 2017).
[6]  *Music and Personality*, https://www.verywell.com/music-and-personality-2795424 (last visited April 18, 2017) ("researchers found that people could make accurate judgments about an individual's levels of extraversion, creativity and open-mindedness after listening to ten of their favorite songs.")

25.     Defendant never obtained consent from any of its customers before intercepting, monitoring, collecting, and transmitting their Media Information. To the contrary, Defendant concealed its actual data collection policies from its customers knowing that (i) a speaker or headphone product that monitors, collects, and transmits users' private music and audio tracks to any third party—let alone a data miner—is worth significantly less than a speaker or headphone product that does not, and (ii) few, if any, of its customers would have purchased a Bose Wireless Product in the first place had they known that it would monitor, collect, and transmit their Media Information.

**FACTS SPECIFIC TO PLAINTIFF ZAK**

26.     On or around March 2017, Plaintiff Zak purchased Bose QuietComfort 35 wireless headphones for $350.

27.     Immediately after he purchased the headphones, Plaintiff registered his product with Bose and downloaded the Bose Connect app onto his smartphone in order to access the headphone's full array of features. During the registration process, Plaintiff provided Bose with his product's unique serial number, as well as his full name and email address.

28.     Plaintiff uses his smartphone several times each day to select music tracks to play through his Bose wireless headphones, and often opens the Bose Connect app while such music is playing to configure the settings, access additional features, and to skip and pause audio tracks.

29.     Unbeknownst to Plaintiff, each and every time he opened Bose Connect, Defendant intercepted and collected all available Media Information from his smartphone— including the names of any music and audio tracks he played through his wireless headphones and his personally identifiable serial number—and transmitted such information to third parties, including to data miner Segment.io.

8

30.     Plaintiff Zak never provided his consent to Bose to monitor, collect, and transmit his Media Information. Nor did Plaintiff ever provide his consent to Bose to disclose his Media Information to any third party, let alone data miner Segment.io.

31.     Likewise, Defendant never informed Plaintiff Zak that it would monitor, collect, transmit, and disclose his Media Information.

32.     Plaintiff Zak would never have purchased his Bose Wireless Product had he known that Defendant would use Bose Connect (which was necessary to access the product's full array of functions and features) to collect, transmit, and disclose his Media Information.

## CLASS ALLEGATIONS

33.     **Class Definitions:** Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class and subclass of similarly situated individuals as follows:

**Class:**  All individuals in the United States who purchased a Bose Wireless Product and installed the Bose Connect mobile app.

**Illinois Subclass:**  All members of the Class who are domiciled in the State of Illinois. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

34.     **Numerosity**: The exact number of members of the Classes is unknown, but

individual joinder in this case is impracticable. The Classes likely consist of tens of thousands of individuals. Members of the Classes can be easily identified through Defendant's records and/or Defendant's retail partners' records.

35.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

> (a)     Whether Defendant's conduct constitutes a violation of the Wiretap Act;
>
> (b)     Whether Defendant's conduct constitutes a violation of the Illinois Eavesdropping Statute;
>
> (c)     Whether Defendant's conduct constitutes an intrusion upon seclusion;
>
> (d)     Whether Defendant was unjustly enriched through its conduct; and
>
> (e)     Whether Defendant's conduct constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practice Act.

36.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

37.     **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Classes, and they have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Classes.

38.     **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Federal Wiretap Act**
**18 U.S.C. § 2510 *et seq.***
**(On behalf of Plaintiff and the Class)**

39.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

40.     The Wiretap Act generally prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1)(a). The Act also prohibits the intentional disclosure of such communications. 18 U.S.C. § 2511(1)(c).

41.     By designing the Bose Connect app to contemporaneously and secretly collect Media Information—including details about the music played by Plaintiff and the Class members—Defendant Bose intentionally intercepted and/or endeavored to intercept the contents of "electronic communications" in violation of 18 U.S.C. § 2511(1)(a).

42.     Further, by automatically and contemporaneously transmitting and disclosing the content of an electronic communication it collected from Plaintiff and the Class members to a third-party company while knowing or having reason to know that the data was obtained through the interception of an electronic communication, Defendant violated 18 U.S.C. § 2511(1)(c).

43.     No party to the electronic communications alleged herein consented to Defendant's collection, interception, use, or disclosure of the contents of the electronic communications. Nor could they—Defendant never sought to obtain Plaintiff's and the Class's consent, nor did Defendant obtain the consent of the other party, such as Spotify or other media providers. Moreover, Defendant was not a party to any of the electronic communications sent and/or received by Plaintiff and members of the Class.

44.     Plaintiff and the Class suffered harm as a result of Defendant's violations of the Wiretap Act, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendant as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Violation of the Illinois Eavesdropping Statute**
**720 ILCS 5/14-1 *et seq.***
**(On behalf of Plaintiff and the Illinois Subclass)**

45.     Plaintiff incorporates the foregoing allegation as if fully set forth herein.

46.     A person violates the Illinois Eavesdropping Statute when he or she knowingly and intentionally "[i]ntercepts, records, or transcribes, in a surreptitious manner any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication. . . ." 720 ILCS 5/14-2(a).

47.     The statute broadly defines "private electronic communication" to mean "any

12

transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(e).

48.     By designing and programming the Bose Connect app to contemporaneously monitor, intercept, collect, record, transmit, and disclose the contents of private electronic communications that Plaintiff and the Illinois Subclass sent Bose Wireless Products and their smartphone operating systems—including the music and audio tracks they selected to play— Defendant intentionally and knowingly monitored, intercepted, collected, recorded, transmitted, and disclosed "private electronic communications," in violation of 720 ILCS 5/14-2.

49.     Plaintiff and the Illinois Subclass members intended that their Media Information would be private. Indeed, their Media Information reveals highly sensitive details about their private use of their personal headphones and speakers that Plaintiff and the Illinois Subclass expected to remain private and confidential. Beyond that, Defendant never notified Plaintiff and the Illinois Subclass that it was monitoring, intercepting, or disclosing their Media Information. Thus, there was no reason for them to believe that anybody could even potentially access, intercept, or disclose their private electronic communications in the first place.

50.     Neither Plaintiff nor the members of the Illinois Subclass ever consented to Defendant's interception, collection, recording, use, or disclosure of their private electronic communications.

51.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Illinois Subclass have been injured and seek: (1) an injunction prohibiting further eavesdropping by Defendant, (2) actual damages, including the amount paid for the Bose Wireless Products,

and (3) punitive damages in an amount to be determined by the court or by a jury pursuant to 720

ILCS 5/14-6(c).

**THIRD CAUSE OF ACTION**
**Intrusion Upon Seclusion**
**(On behalf of Plaintiff and the Illinois Subclass)**

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     As explained herein, Defendant has intruded upon the seclusion of Plaintiff and

each member of the Illinois Subclass by secretly monitoring, collecting, transmitting, and

disclosing their Media Information, which revealed specific details regarding their music and

audio selections, preferences, and habits.

54.     By designing and programming Bose Connect to secretly monitor, intercept,

transmit, and disclose its customers' Media Information, Defendant intentionally and knowingly

intruded upon the seclusion of Plaintiff's and Illinois Subclass members' private affairs.

55.     Further, Defendant's monitoring, collection, transmission, and disclosure of

Plaintiff's and Illinois Subclass members' Media Information—without their knowledge or

consent—is highly offensive to a reasonable person as it is capable of revealing highly private

details about their lives, including *inter alia* their personalities, behavior, and political affiliations

and views, which they believed were confidential, and had no reason whatsoever to suspect that

anybody would be spying on their music and audio selections.

56.     Defendant's intrusion upon Plaintiff's and the Illinois Subclass members' privacy

caused them to mental anguish and suffering in the form of anxiety and concern regarding the

safety and whereabouts of their Media Information.

57.     Plaintiff, on his own behalf and on behalf of the Illinois Subclass, seeks (1) an

injunction that prohibits Defendant from monitoring, transmitting, or disclosing their Media

14

Information without informed consent, (2) actual damages, including the amount paid for the

Bose Wireless Products, and (3) punitive damages, as well as for costs and reasonable attorneys'

fees incurred.

### FOURTH CAUSE OF ACTION
**Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act**
**815 ILCS 505/1 *et seq*.**
**(On behalf of Plaintiff and the Illinois Subclass)**

58.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

505/1 et seq. ("ICFA") protects both consumers and competitors by promoting fair competition

in commercial markets for goods and services.

60.    The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices

including the employment of any deception, fraud, false pretense, false promise, false

advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

61.    The ICFA applies to Defendant's conduct as described herein because it protects

consumers in transactions that are intended to result, or which have resulted, in the sale of goods

or services.

62.    Defendant is a "person" as defined by 505/1(c) because it is a corporation.

63.    Plaintiff and the Illinois Subclass members are "consumers" as defined by

505/1(e) because they purchased merchandise—the Bose Wireless Products—for their own use.

64.    Defendant's Bose Wireless Products are "merchandise" as defined by 505/1(b)

and their sale is considered "trade" or "commerce" under the ICFA.

65.    Defendant violated the ICFA by concealing material facts about their Bose

Wireless Products and the Bose Connect app. Specifically, Defendant omitted and concealed that

Bose Connect secretly monitors, collects, transmits, and discloses its users' highly private and

sensitive Media Information to third parties, including data miners.

66. Defendant's data interception, collection, and disclosure practices are material to the transactions here. Defendant featured its Bose Connect app in its marketing and advertising, offered certain features and functions to customers that were only available through Bose Connect, and charged a higher price for its Bose Wireless Products relative to comparable, non-Bluetooth products. Had Plaintiff and the Illinois Subclass known the true characteristics and behavior of the device (that it collects, transmits, and discloses private usage data to third parties, including data miners), they would not have purchased the Bose Wireless Products or would have paid substantially less for them.

67. Defendant intentionally concealed the Bose Wireless Products' collection, transmission, and disclosure practices because it knew that consumers would not otherwise purchase their products. Indeed, Defendant's concealment of such facts was intended to mislead consumers.

68. Defendant's concealment, suppression, and omission of material facts was likely to mislead reasonable consumers under the circumstances, and thus constitutes an unfair and deceptive trade practice in violation of the ICFA.

69. Thus, by failing to disclose and inform Plaintiff and the Illinois Subclass about its data collection practices, Defendant violated section 505/2 of the ICFA.

70. As a direct and proximate result of these unfair and deceptive practices, Plaintiff and each Illinois Subclass member has suffered actual harm in the form of money paid for a product that they would not have purchased had they known it would monitor, collect, transmit, and disclose Media Information to the third parties, including data miners.

71. As such, Plaintiff and the Illinois Subclass, seeks an order (1) requiring Defendant

to cease the unfair practices described herein, (2) awarding actual damages, including the amount

paid for the Bose Wireless Products, and (3) awarding reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
#### Unjust Enrichment
#### (On behalf of Plaintiff and the Class)

72.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73.     Plaintiff and the Class members conferred a benefit on to Defendant Bose when

they purchased their Bose Wireless Products.

74.     Defendant Bose appreciates and/or has knowledge of such benefit.

75.     Given that Defendant monitored, collected, transmitted, and disclosed Plaintiff's

and the Class's Media Information without their knowledge or consent—and because Plaintiff

and the Class would never have purchased the product had they known that such information

would be accessible and disclosed to third parties, including a data miner—Defendant has

unjustly received and retained a benefit as a result of its conduct.

76.     Principles of equity and good conscience require Bose to return the purchase price

of the Bose Wireless Products to Plaintiff and the Class.

77.     Plaintiff and the Class members seek disgorgement and restitution of any money

received by Defendant as a result of the conduct alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kyle Zak, on behalf of himself and the Class, and the Illinois

Subclass requests that the Court enter an Order:

A.      Certifying this case as a class action on behalf of the Classes defined above,

appointing Kyle Zak as a representative of the Classes, and appointing his counsel as class

counsel;

B.      Declaring that Defendant's actions violate the Wiretap Act, the Illinois Eavesdropping Statute, and the Illinois Consumer Fraud and Deceptive Business Practices Act, and that they constitute an Intrusion Upon Seclusion and Unjust Enrichment;

C.      Awarding injunctive relief that (i) prohibits Defendant from collecting, monitoring, transmitting, or disclosing Plaintiff's and the Classes' Media Information without consent, and (ii) requires Defendant and any third parties with such information in their possession, including Segment.io, to destroy it immediately;

D.      Awarding damages, including actual, statutory, and punitive damages, to Plaintiff and the Classes in an amount to be determined at trial;

E.      Awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses;

F.      Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent allowable;

G.      Awarding such and other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

H.      Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: April 18, 2017                                  Respectfully submitted,

                                                       **KYLE ZAK**, individually and on behalf of
                                                       all other similarly situated,

                                                       By: /s/ Benjamin S. Thomassen
                                                              One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378