**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KYLE ZAK, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff*,<br><br>        v.<br><br>BOSE CORP., a Delaware corporation,<br><br>        *Defendant.* | Case No. 17-cv-2928<br><br>Assigned Judge:<br>Andrea R. Wood<br><br>Designated Magistrate Judge:<br>M. David Weisman |

## DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant Bose Corporation ("Defendant"), by its undersigned counsel, respectfully moves to dismiss Plaintiff's Class Action Complaint and Demand for Jury Trial pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support thereof, Defendant adopts and incorporates its accompanying Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint and Demand for Jury Trial and the accompanying Declaration of Jeffrey Landis.

Respectfully Submitted,

Dated: June 19, 2017

By: */s/ Bart Huff*
    Bart Huff (6225211)
    bart@zwillgen.com
    ZWILLGEN PLLC
    300 N LaSalle St, Suite 4925
    Chicago, IL 60654
    (312) 685-2278 (telephone)

Marc Zwillinger (6226447)
marc@zwillgen.com
Jeffrey Landis (admitted *pro hac vice*)
jeff@zwillgen.com
Nicholas Jackson (admitted *pro hac vice*)
nick@zwillgen.com
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
(202) 706-5205 (telephone)
(202) 706-5298 (facsimile)

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KYLE ZAK, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 17-cv-2928 |
| v. | Assigned Judge: Andrea R. Wood |
| BOSE CORP., a Delaware corporation, | Designated Magistrate Judge: M. David Weisman |
| *Defendant.* | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    A.    Bose's Products and Offerings ....................................................................... 2

    B.    Plaintiff's Use of Bose Connect ..................................................................... 4

    C.    Bose's Alleged Improper Conduct .................................................................. 4

ARGUMENT ........................................................................................................................... 5

    I.    Plaintiff's Wiretap Act Claim Should Be Dismissed ................................... 6

        A.    Bose Did Not Intercept an Electronic Communication .................... 6

        B.    Either Bose Was a Party to Any Communication or There Was No Second Party ................................................................................ 11

        C.    There Was No Disclosure of an Intercepted Electronic Communication ...... 14

    II.    The Court Should Decline to Exercise Jurisdiction Over Plaintiff's Other Claims .......................................................................... 15

    III.    Plaintiff's Illinois Eavesdropping Act Claim Fails as Matter of Law ......... 15

    IV.    The Complaint Fails to State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act ................................................ 17

        A.    The Complaint Does Not Plead with Particularity an Actionable Omission ............................................................................ 18

        B.    Purported Omissions Relating to the App Are Not Material To Plaintiff's Purchase of Bose Wireless Products .............................. 20

        C.    The Complaint Does Not Allege Cognizable Damages ................... 21

    V.    Plaintiff's Intrusion Upon Seclusion Claim Must Be Dismissed ................ 22

    VI.    Plaintiff's Unjust Enrichment Claim Cannot Be Maintained .................... 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Scott Labor LLC*,
377 F. Supp. 2d 647 (N.D. Ill. 2005) ..................................................................23

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ...................................................................................5

*Ameritech Corp. v. McCann*,
297 F.3d 582 (7th Cir. 2002) ...................................................................................6

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) .....................................................16, 23

*Appert v. Morgan Stanley Dean Witter, Inc.*,
2009 WL 3764120 (N.D. Ill. Nov. 6, 2009),
*aff'd,* 673 F.3d 609 (7th Cir. 2012) ................................................................. 10-11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................5, 11

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) .....................................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................5, 11

*Bender v. Board of Fire and Police Comm'rs*,
539 N.E.2d 234 (Ill. App. Ct. 1989) ................................................................. 16-17

*Busse v. Motorola, Inc.*,
813 N.E.2d 1013 (Ill. App. Ct. 2004) ............................................................... 22-23

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014)...................................................................17, 18, 21

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir.2011)...................................................................................24

*Clemons v. Waller*,
82 Fed. Appx. 436 (6th Cir. 2003) .........................................................................13

*Cooney v. Chi. Pub. Schs.*,
   943 N.E.2d 23 (Ill. App. Ct. 2010) ...............................................................21, 23

*Crowley v. CyberSource Corp.*,
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................................................................12

*De Bouse v. Bayer AG*,
   922 N.E.2d 309 (Ill. 2009) ....................................................................................20

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994)..................................................................................14

*Golaris v. Jewel Tea Co.*,
   22 F.R.D. 16, 20 (N.D. Ill. 1958) ............................................................................9

*Groce v. Eli Lilly & Co.*,
   193 F.3d 496 (7th Cir. 1999)..................................................................................15

*Halperin v. International Web Services, LLC*,
   70 F. Supp. 3d 893 (N.D. Ill. 2014) ........................................................................8

*Harkala v. Wildwood Realty, Inc.*,
   558 N.E.2d 195 (Ill. App. Ct. 1990) ......................................................................18

*Hart v. Amazon.com, Inc.*,
   191 F. Supp. 3d 809 (N.D. Ill. 2016),
   *aff'd*, 845 F.3d 802 (7th Cir. 2017) ......................................................................22

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
   545 N.E.2d 672 (Ill. 1989) ....................................................................................25

*In re Google Cookie Placement Consumer Privacy Litigation*,
   806 F.3d 125 (3d Cir. 2015),
   *cert. denied sub nom. Gourley v. Google*, *Inc.*, 137 S. Ct. 36 (Oct. 3, 2016) .................... 12-13

*In re Nickelodeon Consumer Privacy Litigation*,
   827 F.3d 262 (3d Cir. 2016)...................................................................................13

*Lewis v. Lead Indus. Ass'n*,
   793 N.E.2d 869 (Ill. App. Ct. 2003) ......................................................................24

*Martis v. Grinnell Mut. Reinsurance Co.*,
   905 N.E.2d 920 (Ill. App. Ct. 2009) ......................................................................25

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011)..................................................................................11

*Morris v. Harvey Cycle & Camper, Inc.*,
   911 N.E.2d 1049 (Ill. App. Ct. 2009) ...................................................................22

*Pappas v. Pella Corp.*,
   844 N.E.2d 995 (Ill. App. Ct. 2006) ...................................................................18

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
   607 N.E.2d 165 (Ill. 1992) ........................................................................ 19-20

*People v. Clark*,
   6 N.E.3d 154 (Ill. 2014) ........................................................................15, 16

*Phillips v. DePaul Univ.*,
   19 N.E.3d 1019 (Ill. App. Ct. 2014) .................................................................19

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011)..........................................................................24

*Rene v. G.F. Fishers, Inc.*,
   817 F. Supp. 2d 1090 (S.D. Ind. 2011) ......................................................... 6-7, 8, 9

*Rockford Mem'l Hosp. v. Havrilesko*,
   858 N.E.2d 56 (Ill. App. Ct. 2006) .............................................................18, 20, 21

*Schmidt v. Ameritech Illinois*,
   768 N.E.2d 303 (Ill. App. Ct. 2002) ..................................................................23

*Shannon v. Boise Cascade Corp.*,
   805 N.E.2d 213 (Ill. 2004) ........................................................................ 20-21

*Siegel v. Shell Oil Co.*,
   656 F. Supp. 2d 825 (N.D. Ill. 2009),
   *aff'd,* 612 F.3d 932 (7th Cir. 2010) ..................................................................24

*Spector v. Mondelēz Int'l, Inc.*,
   178 F. Supp. 3d 657 (N.D. Ill. 2016) .............................................................17, 18, 19

*Thomas v. Pearl*,
   793 F. Supp. 838 (C.D. Ill. 1992),
   *aff'd*, 998 F.2d 447 (7th Cir. 1993) ...................................................................16

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
   861 F. Supp. 2d 898 (N.D. Ill. 2012) .................................................................19

*United States v. Barrington*,
   648 F.3d 1178 (11th Cir. 2011)................................................................7-8, 9-10

*United States ex rel. Ivanich v. Bhatt*,
   2015 WL 249413 (N.D. Ill. Jan. 20, 2015) .............................................................11

*United States v. Pasha*,
   332 F.2d 193 (7th Cir. 1964)..................................................................................13

*United States v. Ropp*,
   347 F. Supp. 2d 831 (C.D. Cal. 2004)........................................................8, 9, 10, 14

*United States v. Scarfo*,
   180 F. Supp. 2d 572 (D.N.J. 2001) ..........................................................................8-9

*Vazquez-Santos v. El Mundo Broadcasting Corp.*,
   219 F. Supp. 2d 221 (D.P.R. 2002) .........................................................................14

*Vega v. Chicago Park Dist.*,
   958 F. Supp. 2d 943 (N.D. Ill. 2013) .......................................................................23

*Warciak v. Nikil, Inc.*,
   2017 WL 1093162 (N.D. Ill. Mar. 23, 2017)...........................................................22

*Washington v. N. Star Capital Acquisition, LLC*,
   2008 WL 4280139 (N.D. Ill. Sept. 15, 2008) ..........................................................15

*White v. DaimlerChrysler Corp.*,
   856 N.E.2d 542 (Ill. App. Ct. 2006) ........................................................................22

*Williamson v. Curran*,
   714 F.3d 432 (7th Cir. 2013)....................................................................................3

*Wright v. Associated Ins. Cos. Inc.*,
   29 F.3d 1244 (7th Cir.1994)....................................................................................15

## Statutes and Rules

Elec. Commc'ns Privacy Act, 18 U.S.C. § 2510 *et seq.* ..................................................6

18 U.S.C. § 2510(4) .........................................................................................................6

18 U.S.C. § 2510(12) ..................................................................................................1, 6, 7

18 U.S.C. § 2511(1)(a) .....................................................................................................6

18 U.S.C. § 2511(1)(c) .....................................................................................................6

18 U.S.C. § 2511(1)(d) .....................................................................................................6

18 U.S.C. § 2511(2)(c) .................................................................................................... 14

18 U.S.C. § 2511(2)(d) ................................................................................................... 11

Federal Rule of Civil Procedure 9(b) ....................................................................... 17-18

Illinois Eavesdropping Act 720 ILCS 5/14, *et seq.*, ................................................... 15

720 ILCS 5/14-1(g) ........................................................................................................ 17

720 ILCS 5/14-2(a)(3) .............................................................................................. 15-16

## INTRODUCTION

This case is not about wiretapping or eavesdropping. Plaintiff Kyle Zak's ("Plaintiff") grievance with Bose Corp. ("Bose") is that when he used the Bose Connect App—which is unnecessary to use Bose's wireless headphones or speakers—Bose collected and retained the information displayed on the App. Plaintiff's novel theory is that this collection violates the Wiretap Act because his Bose headphones are wireless, and therefore the wireless transmissions are being illegally intercepted. But he is wrong. No communications are being intercepted, and even if they were, neither the Wiretap Act nor the Illinois Eavesdropping Act apply.

Plaintiff's Wiretap Act claim fails for two reasons. *First*, the Wiretap Act does not apply to local Bluetooth communications between a smartphone and headphones because such communications do not affect interstate or foreign commerce. A cognizable intercept under the Wiretap Act first requires the acquisition of an "electronic communication," which is a transfer by a "system that affects interstate or foreign commerce." *See* 18 U.S.C. § 2510(12). Bluetooth is not such a system. It is a local system that operates between devices in close physical proximity without the need for any network or internet connection. Indeed, Bluetooth is like the system that transmits information between a keyboard and computer, which numerous courts have found does not affect interstate or foreign commerce. *Second*, the Wiretap Act expressly authorizes parties to a communication to capture a transmission. Here, the communications at issue occurred between Plaintiff's Bose headphones and Bose's Connect App. Either Bose was one of the parties to the communication, or there were not two parties to the communication, in which case neither the Wiretap Act nor the Illinois Eavesdropping Act apply. Plaintiff's Illinois Eavesdropping Act claim is deficient for the additional reason that any capture of information is not surreptitious.

Displays on Bose's website and the App itself make clear that the Bose Connect App receives the name of the audio track being played.

Plaintiff's Illinois Consumer Fraud Act ("ICFA") claim fares no better. That claim must be dismissed because Plaintiff has not pled an actionable omission, let alone with the particularly required for a fraud claim. He also has not adequately alleged that any omission of information about how the Bose Connect App works was material to his decision to purchase his wireless headphones—which can be used without the App. Indeed, Plaintiff does not allege he was even aware of the App when he purchased his headphones. Moreover, his unsupported allegation that he would not have purchased them (or paid less for them) had he known how the purely optional companion App functioned is not an actionable injury under ICFA.

Plaintiff's common law claims are also fatally flawed. His intrusion upon seclusion claim does not involve the type of highly sensitive private information the tort is intended to guard against. Furthermore, no intrusion can occur where Bose is a party to the communication, and Plaintiff has not alleged anguish and suffering resulting from an alleged intrusion. Plaintiff's unjust enrichment claim fails because it is based entirely on the conduct underlying his deficient statutory claims, and because he does not adequately allege that Bose owed any cognizable duty to act or unjustly retained any benefit it received. Because none of Plaintiff's laundry list of claims can survive scrutiny, his Complaint should be dismissed in its entirety.

## BACKGROUND

### A. Bose's Products and Offerings

Bose is a Delaware corporation headquartered in Framingham, Massachusetts. Complaint ("Compl."), ECF No. 1, ¶ 7. Bose designs, manufacturers, and sells audio equipment, including headphones and speakers. *Id.* ¶ 1. This includes wireless headphones and speakers that customers

can use with smartphones or similar Bluetooth enabled devices. *Id.* ¶¶ 11, 13.

Like countless technology companies, Bose offers a mobile web application, or "App" that individuals can use with certain Bose wireless products. *Id.* According to Plaintiff, Bose introduced this App, called "Bose Connect" in 2016. *Id.* ¶ 11. Bose Connect is not needed to listen to music or other audio on Bose wireless headphones or speakers—customers can do so without ever downloading Bose Connect. *Id.* ¶ 14. Rather, it is a companion app that users of compatible products have the option to download and install on their smartphones. *Id*. ¶¶ 12, 14.

Bose Connect offers several features. It can be used as another method to remotely control a compatible Bose wireless device—for example, to increase or decrease the volume or skip and pause audio tracks. *Id.* ¶¶ 13-14, 21. Users can also use it to adjust the settings on their wireless device or download firmware updates for those products. *Id.* ¶ 13. The App also allows users to share audio files between two Bose wireless devices—for instance two users with Bose Connect can listen to the same playlist from one user's smartphone while running.[1] These features (not to mention the App's name) make clear to even unsophisticated users that Bose Connect "connects" a user's smartphone to his or her headphones or speakers to allow the two devices to communicate with each other. Bose Connect users can access Bose's privacy policy through the App. At the time the Complaint was filed, that policy disclosed that Bose Connect enables users to link their headphones "to a variety of media sources," and that Bose may use "mechanisms to track and

---

[1] *See QC35 Wireless Noise Cancelling Headphones*, Bose, https://www.bose.com/en_us/ products/headphones/over_ear_headphones/quietcomfort-35-wireless.html (last visited June 16, 2017). On a motion to dismiss, a court can consider, in addition to the allegations set forth in the complaint, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Here, the Complaint repeatedly refers to Bose's website and the Bose Connect App, as well as to Segment's website, and the Bose Connect page in the Apple and Google app stores. *See, e.g.*, Compl. ¶¶ 12, 13, 16, 17, 23.

analyze how you use the [A]pp" and "web logs or applications that recognize your device and gather information about its online activity."[2]

### B. Plaintiff's Use of Bose Connect

Plaintiff alleges that he purchased Bose QuietComfort 35 wireless headphones "[o]n or around March 2017" for $350. Compl. ¶ 26. He does not allege that he was aware of Bose Connect at the time, or that the App played any role in his decision to buy the headphones. Nevertheless, he says that "immediately" after buying the headphones he registered them with Bose and downloaded Bose Connect to his smartphone. *Id.* ¶ 27. Plaintiff claims he used the App when listening to music to configure the settings on his headphones, access unnamed additional features, and skip and pause tracks—*i.e.* he used the App to communicate with his headphones. *Id.* ¶ 28. Plaintiff does not identify anything personal about the tracks he listened to, or allege that he listened to anything other than music using Bose Connect. *See* Compl. ¶ 4.

### C. Bose's Alleged Improper Conduct

Plaintiff alleges that, when in use, Bose Connect "monitors and collects" audio tracks being played on a Bluetooth connected Bose device. Compl. ¶ 18. Specifically, he alleges that Bose programmed the App to "record the contents of the electronic communications that users sent to their Bose Wireless Products from their smartphones, including the names of the music and audio tracks they select to play along with the corresponding artist and album information." *Id.* Plaintiff asserts that Bose did so "to create detailed profiles about its users and their music listening histories and habits," but alleges no facts supporting the existence of such profiles. *Id.* ¶ 20.

Plaintiff further alleges that Bose Connect disclosed audio track information for tracks

---

[2] *See* Declaration of Jeffrey Landis ("Landis Decl."), Ex. 1.

played through the App to a third party, Segment.io, Inc. ("Segment"). *Id.* ¶ 22.[3] Plaintiff ominously describes Segment as a "sophisticated data mining and analysis company." *Id.* ¶ 23. As support, he plucks language from Segment's website stating that it can "[c]ollect all of your customer data and send it anywhere." *Id.* But he omits language explaining that such "collection" is performed for Segment's clients within their own data sets. For example, Segment's website explains that companies can collect data "from your mobile apps and websites" and "[s]chematize and load data into your own data warehouse."[4] Plaintiff alleges no facts to the contrary or suggesting that Segment accesses Bose's data for any purpose other than to perform such routing services for Bose.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions and "formulaic recitation[s]" will not suffice. *Twombly*, 550 U.S. at 555. Broad, conclusory legal allegations masked as fact are likewise insufficient to meet *Iqbal's* plausibility standard. *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014). Where the alleged facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint has merely alleged but has not shown that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

---

[3] Throughout the Complaint, Plaintiff alleges that the Bose Connect disclosed information to "third parties" and "third party companies." *See, e.g.* Compl. ¶¶ 2, 18, 22, 29. Notwithstanding its use of the plural, the Complaint identifies only one company to whom Bose Connect supposedly disclosed information— Segment.

[4] *See* Landis Decl., Ex. 2.

## I.      Plaintiff's Wiretap Act Claim Should Be Dismissed

Plaintiff fails to state a Wiretap Act claim for multiple reasons, which stem from the fact that this is simply not a Wiretap Act case.  The Electronic Communications Privacy Act, which amended the Federal Wiretap Act of 1968, 18 U.S.C. § 2510 *et seq*., was designed to "protect against the unauthorized interception of electronic communications." *Ameritech Corp. v. McCann*, 297 F.3d 582, 583 (7th Cir. 2002) (quoting S. Rep. No. 99-541, *reprinted at* 1986 U.S.C.C.A.N 3555).  The Act makes it unlawful to "intentionally intercept[ ] [or] endeavor [ ] to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).  The Act also prohibits disclosure or use of the contents of an unlawfully intercepted communication.  *Id*. § 2511(1)(c), (d).  It includes, however, certain statutory exceptions to these limitations.  *See, e.g.*, *id.* § 2511(1)(d)-(i).  Bose's alleged conduct—the collection of audio track information received by Bose Connect when connected to Bose wireless speakers or headphones via Bluetooth—is not prohibited under the Act and also falls under one of the Act's exceptions.

### A.      Bose Did Not Intercept an Electronic Communication

Plaintiff's Wiretap Act claim fails first because he does not allege an interception of a communication in interstate commerce.  Bluetooth communications are local transmissions that take place within less than 100 meters and thus cannot form the basis of a Wiretap Act claim.  The Act defines "intercept" as the acquisition of "contents" of any "electronic communication" through the use of any electronic, mechanical, or other device. 18 U.S.C. § 2510(4).  An "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a . . . ***system that affects interstate or foreign commerce***." *Id.* § 2510(12) (emphasis added).  Together, these definitions require that "an electronic communication within the purview of the statute must be transmitted by a system

that affects interstate or foreign commerce." *Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1093 (S.D. Ind. 2011).

Plaintiff alleges that Bose Connect improperly collects audio track information transmitted locally between the App on the user's smartphone and the Bose wireless device via Bluetooth. *See* Compl. ¶¶ 13, 19. Setting aside the fact that the Bose Connect App does not "intercept" such communications (it receives them from the headphones), Bluetooth is not "a system that affects interstate or foreign commerce." *See* 18 U.S.C. § 2510(12). It facilitates a local transmission between two physically proximate devices that does not touch interstate or foreign commerce.

The transmission between a smartphone app and a wireless device via Bluetooth is like a transmission between a keyboard and a computer, which courts have found repeatedly to be outside the scope of the Wiretap Act. In *United States v. Barrington*, college students installed keylogger software on registrar computers in order to acquire employees' passwords and then use those passwords to change their grades. *Id.* at 648 F.3d 1178, 1183–84 (11th Cir. 2011). The software "covertly recorded the keystrokes made by registrar employees as they signed onto their computers, capturing their usernames and passwords," and then automatically transmitted the usernames and passwords to the students' email accounts. *Id.* Because there was no evidence that the software had the capacity to capture information or signals being transmitted beyond the user's computer, however, the Eleventh Circuit found that the software was not a device that could be used to intercept an electronic communication in violation of the Wiretap Act. *Id* at 1202–3. Specifically, the court found that "use of a keylogger will not violate the Wiretap Act if the signal or information captured from the keystrokes is not at that time being transmitted beyond the computer on which the keylogger is installed (or being otherwise transmitted by a system that affects interstate commerce)." *Id.* at 1202.

The court in *Rene v. G.F. Fishers, Inc.*, reached the same conclusion. There, plaintiff alleged that defendants' use of a keystroke logger to intercept the transmission of her keystrokes as she typed passwords into a computer violated the Wiretap Act. *Rene*, 817 F. Supp. 2d at 1093. Defendants moved to dismiss, arguing that there could be no "interception" under the Wiretap Act because the communication between the keyboard and computer was not being transmitted by a system that affects interstate or foreign commerce. *Id.* The district court, adopting *Barrington*, agreed, finding that in order to violate the Wiretap Act the "interception must occur while the transmission is traveling through a system that affects interstate or foreign commerce." *Id.* at 1093-94. The court explained:

> The key to the *Barrington* decision lies in the fact that the transmission of keystrokes exists internally on a computer. The relevant 'interception' acted on a system that operated solely between the keyboard and the local computer, and captured a transmission that required no connection with interstate or foreign commerce to reach its destination. *Id.* at 1094.

Courts within this circuit have recognized the requirement that to violate the Wiretap Act the transmission being intercepted must travel through a system affecting interstate or foreign commerce. In *Halperin v. International Web Services, LLC*, a consumer alleged that defendant's "text enhance" software violated the Wiretap Act when it "scan[ned] the text of [Plaintiff's] communications (for example, the html file sent by a third-party website and then displayed by his web browser) in order to insert [] advertising links." *Id.* at 70 F. Supp. 3d 893, 902 (N.D. Ill. 2014). Citing to *Barrington* and *Rene*, the court dismissed the Wiretap Act claim, observing that "Text Enhance too, 'capture[s] a transmission that require[s] no connection' to the outside world." *Id.* Other courts have reached similar conclusions. *See United States v. Ropp*, 347 F.Supp.2d 831, 834 (C.D. Cal. 2004) (holding that whether intercepted signals were electronic communications within the meaning of the statute "turns on whether the signals that were transmitted by a system . . . that affects interstate or foreign commerce); *United States v. Scarfo*, 180 F. Supp. 2d 572, 581

(D.N.J. 2001) (dismissing Wiretap Act indictment where software program did not "search for and record data entering or exiting the computer from the transmission pathway through the modem attached to the computer").

Like in the foregoing cases, the signals being transmitted between the App and Plaintiff's wireless headphones are not being transmitted by a system affecting interstate commerce. As Plaintiff admits, they are being transmitted via Bluetooth, a system that operates locally between devices, not via an interstate network—in fact, it is generally accepted that Bluetooth's maximum range is 100 meters.[5] The only meaningful difference between this situation and the keylogger cases is that in this case the "keyboard" is not connected to the computer with a wire, it is connected via Bluetooth (as many keyboards now are). If that were enough to render Bose Connect's collection of information a Wiretap Act "interception," nearly every App that functions via Bluetooth would potentially violate the Wiretap Act if it collects information about the App's usage (which nearly all apps do). Such a result finds no support in caselaw. Indeed, no court has ever found a Wiretap Act violation in a situation such as this. Put simply, even if Bose Connect were to capture transmissions in transit (which it does not), the systems through which these signals traveled did not affect interstate or foreign commerce and "[a]s a result [they] are not 'electronic communications' under the [Wiretap Act]." *See Rene*, 817 F. Supp. 2d at 1094.

Plaintiff's allegation that the intercepted information was subsequently disclosed to Segment, or transferred to Bose's servers, does not change this conclusion. In both *Barrington* and *Rene* the intercepted keystrokes were automatically emailed to defendants, which transmission involved a network connection affecting interstate commerce (the email servers of the email

---

[5] *See Dispelling Common Bluetooth Misconceptions*, SANS Technology Institute, https://www.sans.edu/cyber-research/security-laboratory/article/bluetooth (last visited June 16, 2017). The Court may take judicial notice of scientific facts which have been well established by authoritative scientists and are generally accepted as irrefutable. *See Golaris v. Jewel Tea Co.,* 22 F.R.D. 16, 20 (N.D. Ill. 1958).

provider), but that did not change the result. *See Barrington*, 648 F.3d, at 1184; *Rene*, 817 F. Supp. 2d at 1092. In *Ropp* the court expressly rejected the argument that the transmission affected interstate commerce because the user was logged on to a network, finding that "[t]he network connection [was] irrelevant to the transmissions, which could have been made on a stand-alone computer that had no link at all to the internet or any other external network." 347 F. Supp. 2d at 838. So too here. Any network connection or transfer of information to Segment or Bose is ancillary to the alleged "interception" which by Plaintiff's own allegations, occurs via a self-contained Bluetooth transmission system requiring no connection to the outside world.[6]

Plaintiff also cannot rely on the ability to listen to streaming content on his smartphone to engender a system that affects interstate commerce. Plaintiff's Complaint alleges that it is the communication between his smartphone and his wireless device that is intercepted, not any communication between the Internet and his smartphone. *See, e.g.* Compl. ¶ 19 (asserting that Bose programmed the App "to continuously record the contents of the electronic communications that users send to their Bose Wireless Products from their smartphones"); *see also id.* ¶¶ 2, 3, 21, 29. It is not alleged, nor could it be, that the App collects any information that is not transmitted to the local Bose headphones or speakers. ***Therefore, it is clearly not communications between the Internet and the phone that are the subject of the alleged interception***. It is a separate communication to or from the headphones that is at issue. Accordingly, the suggestion at the end of the Complaint that "Spotify or other media providers" could be the "other party" to the relevant communications should be disregarded. First, it contradicts the allegations throughout the Complaint that the interception occurred between Plaintiff's device and his headphones. *See Appert v. Morgan Stanley Dean Witter, Inc.,* 2009 WL 3764120, at *4 (N.D. Ill. Nov. 6, 2009)

---

[6] This is apparent to anyone that has used wireless headphones on an airplane. Bluetooth can be enabled to listen to music even with the smartphone in "Airplane Mode," and not connected to the Internet.

(noting that Court need not accept allegations conclusively contradicted by plaintiff's own complaint and exhibit), *aff'd*, 673 F.3d 609 (7th Cir. 2012). Second, the allegation that media providers are on one end of the intercepted communication is "nothing more than a formulaic recitation of the cause of action" not supported by any facts, and is thus "insufficient to state a claim under *Twombley* and *Iqbal*."[7]

The fact that there is no actionable Wiretap Act claim here is further demonstrated by the nature of the information allegedly intercepted. Plaintiff alleges that Bose recorded audio track information (and device serial number). But if Bose was truly "intercepting" communications between Plaintiff's smartphone and his headphones, it would collect the content of the actual music being transmitted in the same way that an interception of a telephone call captures the words being spoken between two people. That is not Plaintiff's claim. Alleging that Bose collects the title of an audio track being played using the App is not the same as alleging that Bose intercepted the actual notes or lyrics of the song. This distinction only confirms that this is a case about information collection, not interception.

## B. Either Bose Was a Party to Any Communication or There Was No Second Party

Even if the transmission system affected interstate commerce, Bose was the only other party to the communication sent between the Bose headphones and the Bose Connect App, so any claim that Bose's retention of data violated the law must rest on a different legal theory. Section 2511(2)(d) of the Wiretap Act states that it is not unlawful for a person to intercept an electronic

---

[7] *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (finding insufficient the allegation that defendant knowingly, intentionally and maliciously prosecuted plaintiff in retaliation for exercising his constitutional rights) (internal quotation marks and citations omitted); *see also United States ex rel. Ivanich v. Bhatt*, 2015 WL 249413, at *2 (N.D. Ill. Jan. 20, 2015) (noting that "[w]ithout supporting facts, the Court does not accept as true Ivanich's conclusion that the services provided by the physician assistants were not integral").

communication "where such person is a party to the communication." Plaintiff asserts that when in use, Bose Connect retains the audio track information being transmitted to his wireless device. Compl. ¶ 18. Of course it does. The App is the intended recipient of the communication; the point of using Bose Connect is to connect the App with the headphones. The name of the App alone communicates that connection. To the extent that such connection constitutes a communication covered by the Wiretap Act, Bose is a party to it. Alternatively, the user was merely talking to himself, a conversation which is not subject to the Wiretap Act.

"Tautologically, a communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 143 (3d Cir. 2015), *cert. denied sub nom. Gourley v. Google, Inc.*, 137 S. Ct. 36 (Oct. 3, 2016). In this context, the only communication between two parties plausibly alleged is a communication between Bose (via Bose Connect) and Plaintiff (via his wireless headphones). Under such circumstances, Bose "acted as no more than the second party to a communication. This is not an interception as defined by the Wiretap Act." *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001).

Wiretap Act cases against Internet advertising providers placing cookies on computers to facilitate Internet advertising provide a useful parallel. In *Google Cookie Placement*, plaintiffs alleged that defendants acquired the plaintiffs' internet history when, in the course of requesting webpage advertising content the plaintiffs' browsers sent information to defendants via a cookie defendants placed on their computers. 806 F.3d at 142. The theory was that once placed, the cookie would "intercept" plaintiffs' communications and transmit them back to Google. The Third Circuit affirmed dismissal of the Wiretap Act claim on the ground that defendants were parties to the communication. *Id.* In doing so, the court explained that "in the context of the statute, a party

to the conversation is one who takes part in the conversation"— even if it takes part, as in Google's case, "by deceiving the plaintiffs' browsers into thinking the cookie-setting entity was a first-party website." [8]  *Id.* at 143; *see also United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) (noting that "officer did not 'intercept' a message while it was en route to another; there was no other on the line"); *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 274 (3d Cir. 2016) (affirming dismissal of Wiretap Act claim where "Google was either a party to all communications with the plaintiffs' computers" or permitted to communicate with them by a party).

Bose too is the relevant party to any communication.  Plaintiff does not allege that Bose collects communications between his smartphone and headphones when Bose Connect is not open (because he cannot).  Bose only receives information when the headphones are connected to the App.  Plaintiff's complaint is that this information is collected and stored by Bose.  But while Plaintiff may believe that Bose should not collect his information when it is being used, that is not a Wiretap Act claim. *See e.g. Clemons v. Waller*, 82 Fed. Appx. 436, 442 (6th Cir. 2003) (noting that even someone who impersonates the intended receiver of a communication may still be a party to that communication for the purposes of the wiretap statute).   Put another way, users intend the App to receive their information.

If Plaintiff asserts that Bose is not a party to any communication, then there is no second party to such communication—Plaintiff would simply be communicating with himself.  No court has ever found a Wiretap Act violation where the communication allegedly intercepted was between a user and himself. This makes sense.  It would not be a Wiretap Act violation to "intercept" a voice memo someone is recording to themselves on their smartphone. Either the Bose wireless devices and Bose Connect are standing in for Bose as parties to the communication, or

---

[8] Bose did not engage in any deceit because its collection was described in the Privacy Policy (not to mention apparent when using the App), but even if it had, no Wiretap Act claim would be possible.

they are standing in for Plaintiff himself. Either way, there is no communication between Plaintiff and a non-Bose party capable of being intercepted. *See, e.g.*, *Ropp*, 347 F. Supp. 2d at 835 (dismissing Wiretap Act indictment where government's theory was that "when [the user] enters data through her keyboard, she is communicating with her own computer").

Finally, even if it were possible to "intercept" a communication between Plaintiff and himself, Plaintiff consented to Bose Connect's collection of information. The Wiretap Act authorizes interception where "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Bose's Privacy Policy disclosed that Bose Connect collected information when in use, and that Bose "may use mechanisms to track and analyze how you use the app." Landis Decl., Ex. 1 at 1. It also explained that Bose uses such analytics information "to learn more about how our customers use the app and linked devices." *Id.* at 1-2. Bose Connect users agree to this Privacy Policy by downloading or using Bose Connect. *Id.* at 1.

### C. There Was No Disclosure of an Intercepted Electronic Communication

Plaintiff's claim that Bose violated the Wiretap Act by ***disclosing*** audio track and serial number information must also be dismissed. The Wiretap Act prohibits disclosing the contents of an electronic communication obtained through an interception. *See* 18 U.S.C. § 2511(c). For the reasons identified above, however, there was no "interception" of an "electronic communication," and if there were, it was permitted. It is well settled that "if the interception itself [is] not unlawful, then the subsequent use or disclosure of intercepted information is not unlawful." *Vazquez-Santos v. El Mundo Broadcasting Corp.*, 219 F. Supp. 2d 221, 229 (D.P.R. 2002); *see also Forsyth v. Barr*, 19 F.3d 1527, 1538 (5th Cir. 1994) (holding that liability for disclosure or use under Wiretap Act requires that the information was obtained from an intercepted communication). That is the

case here. Because Bose did not intercept communications under the Wiretap Act, it cannot improperly disclose such communications.[9]

## II.    The Court Should Decline to Exercise Jurisdiction Over Plaintiff's Other Claims

Given the fatal deficiencies in Plaintiff's only federal claim under the Wiretap Act, the Court should decline to exercise supplemental jurisdiction over his remaining claims. "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."). Given that this case is still at the earliest stage, there is no need to depart from this standard practice for Plaintiff's Illinois statutory or common law causes of action. *See, e.g.*, *Washington v. N. Star Capital Acquisition, LLC*, 2008 WL 4280139, at *3 (N.D. Ill. Sept. 15, 2008) (dismissing Illinois Consumer Fraud Act and other state claims as "[p]recedent in this circuit instructs").

## III.    Plaintiff's Illinois Eavesdropping Act Claim Fails as Matter of Law

Plaintiff's claim under the Illinois Eavesdropping Act, 720 ILCS 5/14, *et sq*., should also be dismissed because he has failed to adequately allege a violation of the Act. The Eavesdropping Act is meant "to protect conversational privacy." *People v. Clark*, 6 N.E.3d 154, 161 ¶ 22 (Ill. 2014). A person violates the Act "when he or she knowingly and intentionally: [i]ntercepts,

---

[9] Plaintiff's improper disclosure claim is also based on a mischaracterization of the services Segment performs for Bose. Specifically, Plaintiff calls Segment a "data miner" and suggests by using excerpted language that Segment sends data received from Bose to third parties, or otherwise uses such data for purposes other than carrying out its contractual obligations to Bose. Compl. ¶ 23. But Plaintiff disingenuously omits language from the same webpage making clear that the referenced collecting and sending occurs within a company's own data sets, not outside of it.

records or transcribes, in a surreptitious manner, any private electronic communication to which he or she is not a party" without consent. 720 ILCS 5/14-2(a)(3).

Plaintiff's Eavesdropping Act claim fails for the same reasons his Wiretap Act claim fails, plus more. First, there was no "interception" of any private communication. Bose Connect collected publicly available audio track information from commercial songs or podcasts and wireless device serial numbers. There was no capture of "[a]udio recordings of truly private conversations [] within the legitimate scope of the statute." *Clark*, 6 N.E.3d at 161 ¶ 22. There was no private conversations at all. Such data collection cannot be the basis of an Eavesdropping Act claim. *See Thomas v. Pearl*, 793 F. Supp. 838, 845 (C.D. Ill. 1992) ("[I]f a conversation is not private, then disclosing the contents of that conversation, whether verbally or by distributing a tape, cannot be unlawful."), *aff'd,* 998 F.2d 447 (7th Cir. 1993).

Plaintiff's Eavesdropping Act claim also fails because the Act only applies to a person that is "not a party" to the communication. 720 ILCS 5/14-2(a)(3). Here, as discussed above, to the extent there was any "communication," Bose was a party to it, and thus there can be no violation of the Eavesdropping Act. *See Angelo v. Moriarty*, 2016 WL 640525, at \*4 (N.D. Ill. Feb. 18, 2016) (holding that "despite Plaintiff's argument that the conversation was private, under the Illinois Supreme Court's pre-1994 interpretation of the statute,[10] because Defendant [] was a party to this conversation, Plaintiff's cannot establish a violation of the Act"); *Bender v. Board of Fire and Police Comm'rs*, 539 N.E.2d 234, 237 (Ill. App. Ct. 1989) (holding that "no eavesdropping occurs where an individual to whom statements are made or directed records them, even without

---

[10] In 2014, the Illinois Supreme Court held certain portions of the Eavesdropping Act as amended in 1994 unconstitutional, including the provision criminalizing the recording of conversations without the consent of all parties, even if they have no expectation of privacy. *See Clark*, 6 N.E.3d at 161-62. As a result, at least one court has turned to the pre-1994 version of the Act and relevant case law when determining whether Plaintiff has adequately alleged an Eavesdropping Act claim.

the knowledge or consent of the person making the statements, because the declarant does not intend to keep his statements private vis-a-vis that individual").

Plaintiff's Eavesdropping Act claim also fails because even if there were an interception of a communication to which Bose was not a party, such interception was not "surreptitious." The Act defines surreptitious as "obtained or made by stealth or deception, or executed through secrecy or concealment." 720 ILCS 5/14-1(g). Bose Connect does not collect audio track information by stealth or deception. When a person listens to an audio track using Bose Connect, the title and other track information appear on the App. Thus, the user is aware that the App is receiving the information at issue. This, along with the fact that Bose's Privacy Policy discloses that Bose collects usage information from Bose Connect when in use, represents the opposite of "secrecy or concealment." 720 ILCS 5/14-1(g).

## IV. The Complaint Fails to State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act

Plaintiff's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") also cannot be sustained. ICFA requires: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). In cases alleging "concealment, suppression or omission" of information, the allegedly concealed facts must be material, and must give rise to an impression that is "affirmatively false"—not merely "incomplete." *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 665, 672 (N.D. Ill. 2016). Deceptive conduct claims under ICFA are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which "requires a pleading to 'state with particularity the circumstances constituting fraud.'" *Camasta v. Jos. A.*

*Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) (citing Fed. R. Civ. P. 9(b)). Here, Plaintiff's ICFA claim is fatally flawed for a number of reasons.

### A.    The Complaint Does Not Plead with Particularity an Actionable Omission

An omission of fact is actionable under ICFA only "where it is employed as a device to mislead." *Spector*, 178 F. Supp. 3d at 672 (citing *Pappas v. Pella Corp.*, 844 N.E.2d 995, 998 (Ill. App. Ct. 2006)).   "Illinois courts are always watchful that the Act not be used to transform nondeceptive and nonfraudulent omissions into actionable affirmations."  *Spector*, 178 F. Supp. 3d at 672 (citation omitted); *see also Harkala v. Wildwood Realty, Inc.*, 558 N.E.2d 195, 200 (Ill. App. Ct. 1990).  Further, both the Federal Rules and Illinois law impose a heightened burden for pleading deceptive practices claims under ICFA.  *See Camasta*, 761 F.3d at 736-37; *Spector*, 178 F. Supp. 3d at 672 (in Illinois, allegations "must show not just the mere possibility of fraud, but that fraud is a 'necessary or probable inference from the facts alleged'") (citation omitted).  "The bald assertion of deception is insufficient to state a claim; the deceptive manner of the omission must be stated with specificity and particularity."  *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 64 (Ill. App. Ct. 2006).  Moreover, "an omission is not actionable as fraud if it gives rise to an incomplete as opposed to an affirmatively false impression."  *Spector*, 178 F. Supp. 3d at 672 (internal citations and quotation marks omitted).

While the putative class is composed of individuals who purchased a Bose Wireless product, this case is not about misrepresentations involving those products, only the functionality of the separate Bose Connect App, which is not integral to the product.  *See* Compl. ¶¶ 11-14.  This is evident from the fact that it is information related to the download of the App that Plaintiff suggests is misleading.  *See id.* ¶¶ 12, 16.  But those very same sources disclosed the purported "secret" Bose is accused of concealing—that the App accessed "the names of the music and audio tracks [users] select to play."  *Id.* ¶ 19.  Specifically, the Bose website, not to mention the Apple

and Google app stores, identified in the Complaint each include a screenshot of the App, which shows a panel at the bottom of the program screen ***in which song title and artist information are plainly visible***.[11]  In other words, it is apparent from the face of those disclosures that Bose, through the App, receives information about a user's currently playing music as part of the App's functionality. That fact is also apparent when a user starts using the App.

But even if that were not the case, Plaintiff has not alleged any affirmatively misleading impression created by Bose's statements about the App when they are viewed in the context in which consumers perceived them.  The mere fact that Bose did not disclose some details regarding the configuration of its App in its general marketing materials cannot give rise to ICFA liability.  *See, e.g.*, *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1030 (Ill. App. Ct. 2014) (while defendant "certainly could have been more specific" about the information it disclosed, ICFA claim dismissed because "plaintiffs have identified no affirmative misrepresentation"); *Spector*, 178 F. Supp. 3d at 672 (ICFA claim dismissed because "Plaintiff has not alleged facts from which the Court can plausibly infer that Defendant [made affirmative statements] . . .  such that it can be said that Defendant fraudulently omitted a material fact . . .  with the intent to deceive consumers.").

Plaintiff's mix of self-serving conclusions fall far short of the level of specificity and particularity required to plead deceptive omissions.  They lack the "who, what, when, where, and how" of a plausible "fraud or misrepresentation."  *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908–09 (N.D. Ill. 2012) (citations and quotation marks omitted); *see also Spector*, 178 F. Supp. 3d at 671-72 ("[T]he fact that Plaintiff's claims sound in fraud tips the balance decidedly against a finding of plausibility.").  Nor does the Complaint establish that fraud is the

---

[11] *See* Landis Decl. Ex. 3.  *See also Bose Connect on the App* Store, https://itunes.apple.com/us/app/bose-connect/id1046510029?mt=8; *Bose Connect, Google Play*, https://play.google.com/store/apps/details?id=com.bose.monet&hl=en (last visited June 16, 2017).

"necessary or probable inference" of Bose's alleged actions. *Spector*, 178 F. Supp. 3d at 672 (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992)). To the contrary, the innocent inference derived from the Complaint's non-conclusory allegations is the far more probable one: that Bose collects song information as part of the normal and visible functioning of the App.

### B. Purported Omissions Relating to the App Are Not Material to Plaintiff's Purchase of Bose Wireless Products

Plaintiff's ICFA claim separately fails because the factual omissions alleged in the Complaint are not material. In order to be material, a fact must be "the type of information upon which a consumer would be expected to rely in making a purchasing decision." *Rockford*, 858 N.E.2d at 62. The purchasing decision in this case concerned whether or not to purchase Bose wireless headphones. *See* Compl. ¶ 26. The Complaint acknowledges that the App is an optional "companion app" that is not necessary to use the purchased wireless devices. *Id.* ¶ 14. Most of the App's functionality merely provides an alternative way to access controls that are available through other means (including the headphones themselves in some cases)—for example, stopping and starting audio tracks, controlling volume, and monitoring battery level. *See id.* ¶¶ 13-14.

It is a corollary to the materiality requirement that a plaintiff cannot be deceived by a statement he "has neither seen nor heard." *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009). While the Complaint identifies a few statements from Bose referencing the App, nowhere does Plaintiff allege that he saw any of those statements before purchasing his headphones. *See* Compl. ¶ 26. Absent any allegation that Plaintiff learned about Bose Connect before buying his headphones, the App could not have been material to his purchase decision. That alone is fatal to his claim. *See Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) ("[D]eceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the

plaintiff."); *Camasta*, 761 F.3d at 738 (to state an ICFA claim, the allegedly deceptive representation "must have been made to [plaintiff] *before* the purchase of the merchandise").

Even if that basic pleading deficiency could be remedied, the Complaint's materiality allegations are nonetheless insufficient. The Complaint asserts that the alleged deception is material because the App "offered certain [unique] features and functions," and class members "would not have purchased the Bose Wireless Products or would have paid substantially less for them" had they known about the "true characteristics and behavior of the device." Compl. ¶ 66. The devices purchased were Bose Wireless Products. No defect has been alleged with respect to those products, and their use was not contingent on the App. Nor does Plaintiff attempt to ascribe a concrete value to the App apart from the cost of the headphones. Plaintiff does claim that Bose charged a higher price "relative to comparable, non-Bluetooth products." *Id.* But Bluetooth functionality is independent from use of the Connect App.[12] It is not plausible that upon learning of the alleged omissions regarding the free optional App, a reasonable person "would have acted differently" with regard to the headphone purchase. *Rockford*, 858 N.E.2d at 62.

## C.    The Complaint Does Not Allege Cognizable Damages

Plaintiff's ICFA claim also fails because the Complaint does not allege actual damages as required by statute. The statutory element of actual damages requires that plaintiff suffer actual pecuniary loss. *Camasta*, 761 F.3d at 739; *see also Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 31 (Ill. App. Ct. 2010) ("To support a[n] [ICFA] claim, actual damages must arise from purely economic injuries.") (internal quotation marks omitted). The Complaint alleges that class members suffered harm "in the form of money paid for a product they would not have purchased," or "would have paid substantially less for," had they known the optional App "would monitor,

---

[12] Plaintiff is not alleging that the ability to connect to his smartphone wirelessly was unwanted. Indeed, it was likely integral to his purchase, otherwise he would have purchased non-Bluetooth headphones.

collect, transmit, and disclose [their] Media Information to third parties." Compl. ¶¶ 66, 70. But there is no allegation that the class did not receive the full value of the wireless headphones they purchased, or incurred any out-of-pocket expenses as a result of the alleged concealment. The only injury alleged stems from the use of the free companion app.[13]

Any emotional and privacy harms Plaintiff alleges also do not satisfy ICFA's actual damages requirement. *See Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009); *Warciak v. Nikil, Inc.*, 2017 WL 1093162, at *5 (N.D. Ill. Mar. 23, 2017) (denying ICFA claim alleging "injuries in the form of invasions of privacy and violations of [class members'] statutory rights" as not cognizable); *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 823 (N.D. Ill. 2016) (compiling cases holding that "injury to the intangible aspects of [a] person," "mental anguish," "aggravation" and the like do not constitute actual damages under ICFA), *aff'd*, 845 F.3d 802 (7th Cir. 2017).

## V.   Plaintiff's Intrusion Upon Seclusion Claim Must Be Dismissed

Plaintiff's intrusion upon seclusion claim must also be dismissed because his allegations do not entail the sort of highly sensitive private information against which this tort is intended to guard. To assert an intrusion upon seclusion claim, Plaintiff must allege that: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*,

---

[13] Even if this type of damages were cognizable, the fact that Plaintiff makes no attempt to disentangle the value of the fully functioning headphones from the purported privacy harms warrants dismissal. *See Phillips*, 19 N.E.3d at 1034 (plaintiff's failure to "plead any reliable mechanism for calculating the 'true' value" of law degree in light of alleged misrepresentations about employment statistics forms independent ground for dismissal); *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 550 (Ill. App. Ct. 2006) ("Because of his failure to be specific about the diminution of value, we do not believe he has adequately pled actual damages.").

813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004). "Without private facts, the other three elements of the tort need not be reached." *Id.*

The Complaint alleges that Bose obtained information about putative class members' "personal audio selections," such as "music, radio broadcast, Podcast, and lecture choices." Compl. ¶ 4. But intrusion upon seclusion is not meant to protect "personal, rather than private, matters." *Vega v. Chicago Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013); *see also Schmidt v. Ameritech Illinois*, 768 N.E.2d 303, 312 (Ill. App. Ct. 2002) (to adequately plead intrusion upon seclusion, "plaintiff must demonstrate that the intrusion is not only offensive, but highly offensive to a reasonable person"); *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005) ("Examples of inherently private facts include a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate[,] personal nature.") (internal quotation marks omitted); *Busse*, 813 N.E.2d at 1018 (examples of private facts include "family problems, romantic interests, sex lives, health problems, future work plans and criticism of [an employer]"). Plaintiff does not identify any non-conclusory facts suggesting an intrusion into matters "which are facially embarrassing and highly offensive if disclosed." *Cooney*, 943 N.E.2d at 32. Plaintiff's only allegation regarding his personal activity is the cursory statement that he listened to "music and audio tracks" through his wireless headphones. Compl. ¶ 29.

Plaintiff also fails to adequately allege any actionable injury. "Under Illinois law, a plaintiff must prove actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community in order to recover damages for torts such as intrusion upon seclusion." *Schmidt*, 768 N.E.2d at 316. That injury must flow from the alleged intrusion, not any subsequent disclosure. *See Angelo*, 2016 WL 640525, at *5 (dismissing intrusion upon seclusion claim because plaintiffs pled that publication of allegedly private

conversations caused their injury, not the prying itself).  The only injury identified here is the Complaint's speculative assertion of "anxiety and concern regarding the safety and whereabouts of [putative class members'] Media Information."  Compl. ¶ 56.  This does not rise to the level of injury actionable under the tort.  And even if it did, that injury would not stem from any "intrusion" by Bose, but rather from alleged disclosure.

## VI.    Plaintiff's Unjust Enrichment Claim Cannot Be Maintained

Plaintiff's unjust enrichment claim also must be dismissed because it is based on the conduct underlying his defective federal and state statutory claims, and because he does not adequately allege that Bose owed any cognizable duty to act or unjustly retained any benefit.

"Under Illinois law, unjust enrichment is not a separate cause of action," but rather "'a condition that may be brought about by unlawful or improper conduct as defined by law . . . and may be redressed by a cause of action based upon that improper conduct.'"  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (citation omitted).  Here, Plaintiff's unjust enrichment claim is premised solely on the alleged misconduct underlying his deficient federal and state claims and therefore fails as well.  *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir.2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim . . . will stand or fall with the related claim."); *Siegel v. Shell Oil Co.*, 656 F.Supp.2d 825, 834 (N.D. Ill. 2009) (where plaintiff fails to establish ICFA claim, "unjust enrichment cannot serve as the basis for liability"), *aff'd*, 612 F.3d 932 (7th Cir. 2010).

Plaintiff also fails to adequately allege the requirements for an unjust enrichment claim.  Unjust enrichment requires "some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty."  *Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 877 (Ill. App. Ct. 2003).  Plaintiff fails to allege such duty, let alone that

Bose did not abide by it. *See Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) ("Absent an allegation that defendant was under a duty to plaintiff, plaintiff failed to state a cause of action for unjust enrichment."). Unjust enrichment also requires that defendant unjustly retain a benefit to the plaintiff's detriment in a way that violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989). Plaintiff fails to set out any specific, non-conclusory allegations identifying what benefits Bose unjustly retained in violation of fundamental principles of justice. Plaintiff received the Bose wireless headphones he purchased, making Bose's receipt and retention of the purchase price not "unjust." And Plaintiff did not by downloading the free App convey a benefit to Bose that can (let alone should) be returned.

## CONCLUSION

This is not a Wiretap Act case. This is not an Eavesdropping Act case. At best, Plaintiff is claiming that Bose's privacy policy should have been more clear as to what information is collected or retained by Bose. That alleged deficiency, however, does not support the causes of action asserted in this Complaint. The Court should therefore grant Bose's motion to dismiss.


Dated: June 19, 2017                    By: /s/ Bart Huff
                                        Bart Huff (6225211)
                                        bart@zwillgen.com
                                        ZWILLGEN PLLC
                                        300 N LaSalle St, Suite 4925
                                        Chicago, IL 60654
                                        (312) 685-2278 (telephone)

                                        Marc Zwillinger (6226447)
                                        marc@zwillgen.com
                                        Jeffrey Landis (admitted *pro hac vice*)
                                        jeff@zwillgen.com
                                        Nicholas Jackson (admitted *pro hac vice*)
                                        nick@zwillgen.com

ZWILLGEN PLLC
1900 M. Street NW, Suite 250
Washington, DC 20036
(202) 706-5205 (telephone)
(202) 706-5298 (facsimile)

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on June 19, 2017, I caused the foregoing

to be electronically filed with the Clerk of Court using the CM/ECF system, which will send

notification of such filling to the following attorneys of record:

Jay Edelson
Benjamin Thomassen
Rafey S. Balabanian
EDELSON PC
350 North LaSalle, Suite 1300
Chicago, IL 60654
jedelson@edelson.com
bthomassen@edelson.com
rbalabanian@edelson.com

*/s/ Jeffrey Landis*
Jeffrey Landis