**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| KYLE ZAK, individually and on behalf of all others similarly situated, | Case No. 17-cv-2928 |
| *Plaintiff,* | Hon. Andrea R. Wood |
| *v.* | Magistrate Judge M. David Weisman |
| BOSE CORP., a Delaware corporation, | |
| *Defendant.* | |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Kyle Zak ("Zak" or "Plaintiff") brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendant Bose Corp. ("Bose" or "Defendant") for secretly collecting, transmitting, and disclosing its customers' private music and audio selections to a third party data mining company. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.     Defendant Bose manufactures and sells high-end wireless headphones and speakers. To fully operate its wireless products, customers must download Defendant's "Bose Connect" mobile application from the Apple App or Google Play stores and install it on their smartphones.

2.     Bose Connect provides consumers with two primary features. First, it allows consumers the ability to "pair" their smartphones with their Bose wireless products to access and control the headphone's settings and features. Second, Bose designed Bose Connect to act as a remote control for consumers' streaming music subscription services, such as Spotify, Apple Music, and more.

1

3.      Unbeknownst to its customers, however, Defendant also designed Bose Connect to (i) collect and record the titles of the music and audio files consumers choose to play through their Bose wireless products and (ii) transmit such data along with other personal identifiers to a third party data miner without consumers' knowledge or consent.

4.      The data collected from consumers' smartphones is valuable to Bose and to others. The secretly collected data reveals insights into consumer listening behavior, an increasingly valuable commodity. By collecting such data *en masse*, Bose can sell access to such data to the highest bidder. For example, Spotify could purchase listening behavior of Apple Music customers or Pandora could pay to see what Spotify users listen to.

5.      Beyond mere commercial value, one's personal audio selections—including music, radio broadcast, Podcast, and lecture choices—provide intimate insight into one's personality, behavior, political views, and personal identity. Scientific studies demonstrate that musical preferences can reveal one's age, personality, and values, and can likely even be used to identify people with autism spectrum conditions.[1]

6.      And by tracking one's listening behavior beyond music, such as audiobooks, podcasts, and radio, the listener's personality, values, likes, dislikes, and preferences are further revealed. For example, a person that listens to Muslim prayer services is very likely a Muslim; a person that listens to the *Ashamed, Confused, And In the Closet* Podcast is very likely a homosexual in need of a support system; a person that listens to *The Body's HIV/AIDS* Podcast is very likely an individual that has been diagnosed and is living with HIV or AIDS.

7.      Unfortunately, purchasers of Defendant's headphones could not have anticipated

---

[1]      Greenberg DM, Baron-Cohen S, Stillwell DJ, Kosinski M, Rentfrow PJ
(2015) Musical Preferences are Linked to Cognitive Styles. PLoS ONE 10(7): e0131151.
https://doi.org/10.1371/journal.pone.0131151.

that Bose would clandestinely monitor their music and audio selections and that amassed data would be transmitted to a third party data miner for further analysis. As it stands, Defendant's conduct demonstrates a wholesale disregard for consumer privacy rights and violates numerous state and federal laws. As such, Plaintiff brings this suit individually and on behalf of all others similarly situated and seeks (i) an injunction prohibiting Bose from collecting, transmitting, and disclosing consumers' music and audio selections, (ii) actual and statutory damages arising from the invasion of their privacy, and (iii) actual damages arising from their purchase of the Bose Wireless Products, including the return of the purchase price of the product and disgorgement of profits.

## PARTIES

8.     Plaintiff Kyle Zak is a natural person and a citizen of the State of Illinois.

9.     Defendant Bose Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at The Mountain, Framingham, Massachusetts 01701.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claim under the Wiretap Act, 18 U.S.C. § 2510, a federal statute, and supplemental jurisdiction over Plaintiff's state law claims because they are so related to Plaintiff's federal claim that they form part of the same case or controversy under Article III of the United States Constitution. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

11.     This Court has personal jurisdiction over Defendant because it conducts business in the State of Illinois and because the events giving rise to this lawsuit occurred, in substantial part, in the State of Illinois.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred, in substantial part, in this District and Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

*A Brief Overview of Defendant Bose and The Bose Connect App*

13.     In 2015, Bose introduced a new feature for some of its products that enabled customers to remotely control certain Bose headphones and speakers from their smartphones, including the QuietComfort 35, SoundSport Wireless, Sound Sport Pulse Wireless, QuietControl 30, SoundLink Around-Ear Wireless Headphones II, and SoundLink Color II ("Bose Wireless Products").

14.     Bose customers could download Defendant's proprietary Bose Connect app from the Apple App Store or the Google Play Store and install it on their smartphones to take advantage of this new remote control feature.

15.     Once downloaded, the Bose Connect app allows customers to "pair" (i.e., connect) their Bose Wireless Products to their smartphones using a Bluetooth connection, and access essential product functionality. For example, through the Bose Connect app, customers can (i) download and install firmware updates to the Bose Wireless Products, (ii) manage the connections between the Bose Wireless Products and mobile devices, (iii) adjust the Bose Wireless Products' noise cancellation settings, (iv) customize the Bose Wireless Products'

4

"Auto-Off" settings (for purposes of conserving the product's battery life), and (v) share music between two Bose Wireless Products.[2]

16.     Bose also programmed the Bose Connect app to act as a remote control for consumers' streaming music services. Through Bose Connect, consumers can pause, resume, rewind, and skip songs played through Spotify, Apple Music, and Pandora, amongst others. That is, the Bose Connect app is not itself a streaming music player like Spotify. Instead, consumers can use the app as a portal to Spotify and other streaming services and remotely control their Bose Wireless Products.

17.     Defendant advertised the Bose Connect app functionality on the outside packaging of all Bose Wireless Products, and details that use of the app is *required* to fully use the devices' features. For instance, the packaging of its SoundSport wireless headphones states in multiple languages: "[t]he Bose Connect app unlocks current and future headphone features. Download now."

18.     And on the Bose QuietComfort 35 headphones, Bose listed only six features, including the Bose Connect app:

                    *                    *                    *

---

[2]     *Bose Connect on the App Store*, https://itunes.apple.com/us/app/bose-connect/id1046510029 (last visited April 18, 2017).



(**Figure 1.**)

19.     Further, within the product's packaging, Bose included an informational card

instructing listeners to download the Bose Connect app:

&ast;                          &ast;                          &ast;



(**Figure 2.**)

20.     Likewise, Defendant touts the functionality of Bose Connect on its website, and invites consumers to download the app to "get the most out of your headphones." Defendant explains that Bose Connect "makes connecting and switching between devices easier than ever. It also provides product tips and lets you personalize your settings." *See* Figure 3.



(**Figure 3.**)[3]

21.     Defendant also encourages its customers to register their Bose Wireless Products with Bose. Registered product owners will receive "confirmation of ownership" and "important updates for products."[4] During product registration, consumers provide their Bose Wireless Product's serial number, full name, email address, and phone number.

***Defendant Designed the Bose Connect App to Secretly Collect Consumers' Usage Data***

22.     As described above, consumers download and install Bose Connect to unlock and use all of the Bose Wireless Products' features and functions. Yet, Bose failed to notify or warn consumers that it programmed Bose Connect to monitor and collect—in real time—the music and audio tracks being played. Nor did Bose disclose that it transmits the collected listening data to third parties.

23.     To start, Bose programmed the Bose Connect app to continuously record how

---

[3]     *QC35 Wireless Noise Cancelling Headphones | Bose*, https://www.bose.com/en_us/products/headphones/over_ear_headphones/quietcomfort-35-wireless.html (last visited April 18, 2017).

[4]     *Product registration*, https://www.bose.com/en_us/support/product_registration.html (last visited April 18, 2017).

consumers use the Bose Connect app, ostensibly for diagnostics and usage purposes. Software developers often seek to collect such diagnostic and usage data to help them fix bugs within an app or software, determine what features are used the most (or the least), and otherwise try to improve their software. Developers that respect customers' privacy present users with a disclosure, opt-in screen asking whether the company can monitor and collect information diagnostic data, similar to how Apple seeks access to consumers' diagnostic data:



(**Figure 4**.)

24.     Bose programmed its Bose Connect app to collect more than just diagnostics and usage data, though. Indeed, Bose designed the app to intercept the contents of the electronic communications between the listener and his or her streaming music services. Together with the diagnostics and usage data, Bose designed the Bose Connect app to collect the names of the music and audio tracks the listener selects to play along with the corresponding artist and album information, the Bose Wireless Product's serial numbers, and other information to "fingerprint" (i.e., uniquely identify) the listener's device (collectively, "Media Information").

25.     Bose's method of collection goes further: by designing its remote control feature

to contemporaneously monitor and collect information resulting from listener interaction with the app, Bose intercepts the contents of electronic communications where it is not a party.

26.     For instance, when a listener presses the track forward button in the Bose Connect app, the listener is issuing a command to remotely control their media of choice, such as Spotify (or another streaming music service). *See* <u>Figure 5</u>. That command is routed through the mobile device and a communication request is sent to Spotify for the next song in the listener's playlist. A Spotify server then communicates with the mobile device to deliver the music file that contains track information (e.g., artist, album, and song name). The Bose Connect app accesses and displays that track information.



(**<u>Figure 5</u>**, showing the remote control functionality of the Bose Connect app.)

27.     Once the Bose Connect app has collected device data and intercepted the user-to-music-provider communications described above, Bose programmed the app to automatically

disclose and transmit Media Information associated with those communications to third party companies, including a data miner called Segment.io, Inc. ("Segment.io"), a sophisticated data mining and analysis company that can be used to "Collect all of your customer data and send it anywhere." *See* Figure 6.



(**Figure 6**.) [5]

28.    Following this transmission, Bose—a customer of Segment.io—can also access the intercepted data. This is where Bose's device fingerprinting becomes important. Bose solicits registration information (name and email address) from listeners and collects that information along with the product's serial number. And by collecting the Bose Wireless Products' serial numbers along with Media Information, Bose is able to link the Media Information to any individual that has registered or will register their products, thus enabling Bose to create detailed profiles about its users and their music listening histories and habits. That is, by "fingerprinting" the device, Bose can link registration information (with names and addresses and other demographic data) to any subsequent media tracking (e.g., listening habits).

29.    Despite its interception, transmission, and ability to access this Media

---

[5]    *Analytics API and Customer Data Platform | Segment*, https://segment.com/ (last visited April 18, 2017).

Information, Bose is *not* party to these listener-to-music-provider communications. When installed, the Bose Connect app is merely a remote control, which processes a user's requests for songs and a music provider's provision of song information in return. Just as Microsoft is not a party to (or intended recipient of) each and every email a user sends using the Microsoft Outlook interface (i.e., even though the program is used to send communications), and just as Apple is not a party to (or intended recipient of) each and every phone call a user makes using the iPhone's "phone" app (i.e., even though the app is used to send communications), Bose is not a party to (or intended recipient of) any communications its Bose Connect remote control app that are accessed through it.

30.     The music and audio tracks that people listen to (i.e., Media Information) reveal sensitive information about themselves that suggests their politics, religious views, thoughts, sentiments, and emotions. In other words, knowing what music, radio broadcasts, lectures, and Podcasts a person chooses to listen to is enough to make accurate judgments and predictions about their personalities and behaviors.[6]

31.     Bose understands the value of listener data and how it can be used to reveal information about consumers. Recently, Bose was seeking to hire "Music Information Retrieval Specialists" to apply "algorithmic expertise" to data to uncover "contextual music recommendations, music similarity, playlist generation, and tempo/intensity estimation."[7] Such

---

[6]     *Music and Personality*, https://www.verywell.com/music-and-personality-2795424 (last visited April 18, 2017) ("researchers found that people could make accurate judgments about an individual's levels of extraversion, creativity and open-mindedness after listening to ten of their favorite songs.")

[7]     *Music Information Retrieval/Machine Learning for Connected Audio at Bose at Bose Corporation - Stack Overflow*, https://stackoverflow.com/jobs/84501/music-information-retrieval-machine-learning-for-bose-corporation (last visited July 7, 2017).

music data analytics is increasingly vital to the music and music streaming industry. In just the past few years, music streaming services have paid over one hundred million dollars to purchase music data analytic companies.[8]

32.      These deals indicate not only the high price the industry places on listener data, but also the competitive nature of the music streaming market. Bose undoubtedly recognizes the value and importance of acquiring listener data on a massive scale and across music streaming services. Streaming services will certainly seek to purchase access to such data to not only learn more about their listeners but to gain insight into how listeners use competing services. Selling access to such a database would follow the model of Vizio, one of the largest television manufacturers who sought to profit by selling access to consumers' clandestinely collected television viewing habits.[9]

33.      Unfortunately, Defendant never obtained consent from any of its customers before intercepting, monitoring, collecting, and transmitting their Media Information. To the contrary, Defendant concealed its actual data collection policies from its customers knowing that (i) an audio product that monitors, collects, and transmits users' private music and audio tracks to any third party—let alone a data miner—is worth significantly less than an audio product that does not, and (ii) few, if any, of its customers would have purchased a Bose Wireless Product in the first place had they known that it would monitor, collect, and transmit their Media Information.

---

[8]      Zach Blumenfeld, *A Trillion Data Points: The Growth of Music Analytics*, http://performermag.com/band-management/a-trillion-data-points-the-growth-of-music-analytics/ (last visited July 7, 2017).

[9]      Ethan Wolff-Mann, *If You Have a Vizio TV, It's Watching You Too*, http://time.com/money/4104816/vizio-tv-collecting-selling-data-viewers/ (last visited July 7, 2017).

## FACTS SPECIFIC TO PLAINTIFF ZAK

34.     On or around February 2017, Plaintiff Zak purchased Bose QuietComfort 35 wireless noise-canceling headphones for $350.

35.     At the time of purchase, Plaintiff understood that the Bose QuietComfort 35 wireless noise-canceling headphones required the Bose Connect app in order to be fully functional. Indeed, he saw on the product's packaging that he was to "Enhance headphone with Bose® Connect app." The importance of the Bose Connect app to his headphones was further strengthened by the included instructions card atop his headphones within the box that referred him to the "BOSE® CONNECT" app in the Apple App Store.

36.     Immediately after he purchased the headphones, Plaintiff registered his product with Bose and downloaded the Bose Connect app onto his smartphone in order to access the headphone's full array of features. During the registration process, Plaintiff provided Bose with his product's unique serial number, as well as his full name and email address.

37.     Plaintiff regularly used his smartphone to listen to streaming music and audio from various third party sources, with the audio playing through his Bose wireless headphones. For example, Plaintiff used the Bose Connect app to remotely control Spotify and to configure the settings, access additional features, and to skip and pause audio tracks.

38.     Unbeknownst to Plaintiff, each and every time he opened and used Bose Connect, Defendant collected Media Information from his smartphone—including the names of any music and audio tracks he played through his wireless headphones and his personally identifiable serial number—and transmitted such information to third party, data miner Segment.io.

39.     To return to the example above, each time Plaintiff used the Bose Connect app to remotely control the music he listened to through Spotify, Defendant intercepted the

14

communications between Plaintiff and Spotify. For instance, when Plaintiff would press the "play" button, Defendant programmed the Bose Connect app to contemporaneously monitor and collect that information, calling it a "Now Playing Event" and collecting the following "properties" (amongst other things):

> Event Name: "Track Info Changed"
> Event Value:
>> Artist: [Name of artist being listened to]
>> Album: [Name of album being listened to]
>> Song Title: [Name of song being listened to]

40.     Plaintiff Zak never provided his consent to Bose to monitor, collect, and transmit his Media Information, including Media Information communicated between himself and third party audio streaming providers. Nor did Plaintiff ever provide his consent to Bose to disclose his Media Information to any third party, let alone data miner Segment.io.

41.     Likewise, Defendant never informed Plaintiff Zak that it would monitor, collect, transmit, and disclose his Media Information.

42.     Plaintiff Zak would never have purchased his Bose Wireless Product had he known that Defendant would use Bose Connect (which was necessary to access the product's full array of functions and features) to collect, transmit, and disclose his Media Information.

## CLASS ALLEGATIONS

43.     **Class Definitions:** Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class and subclass of similarly situated individuals as follows:

> **Class:**  All individuals in the United States who purchased a Bose Wireless Product, installed the Bose Connect mobile app, and used the Bose Connect App to remotely control a streaming music service.

> **Illinois Subclass:**  All members of the Class who are domiciled in the State of Illinois.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

44. **Numerosity**: The exact number of members of the Classes is unknown, but individual joinder in this case is impracticable. The Classes likely consist of tens of thousands of individuals. Members of the Classes can be easily identified through Defendant's records and/or Defendant's retail partners' records.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

> (a) Whether Defendant's conduct constitutes a violation of the Wiretap Act;
>
> (b) Whether Defendant's conduct constitutes a violation of the Illinois Eavesdropping Statute;
>
> (c) Whether Defendant was unjustly enriched through its conduct; and
>
> (d) Whether Defendant's conduct constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practice Act.

46. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of

Defendant's uniform wrongful conduct.

47.     **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Classes, and they have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Classes.

48.     **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Violation of the Federal Wiretap Act
### 18 U.S.C. § 2510 *et seq.*
### (On behalf of Plaintiff and the Class)

49.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50.     The Wiretap Act generally prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1)(a). The Act also prohibits the intentional disclosure of such communications. 18 U.S.C. § 2511(1)(c).

51.     By designing the Bose Connect app to contemporaneously and secretly collect Media Information—including details about the music played by Plaintiff and the Class members—Defendant Bose intentionally intercepted and/or endeavored to intercept the contents of "electronic communications" in violation of 18 U.S.C. § 2511(1)(a).

52.     The Media Information intercepted by Defendant are electronic communications that affect interstate commerce because they are communications between Plaintiff and members of the Class on one hand and streaming music services on the other. Those communications, as they relate to streaming music, necessarily traverse over the Internet, an interstate communications channel.

53.     Further, by automatically and contemporaneously transmitting and disclosing the content of an electronic communication it collected from Plaintiff and the Class members to a third-party company while knowing or having reason to know that the data was obtained through the interception of an electronic communication, Defendant violated 18 U.S.C. § 2511(1)(c).

54.     No party to the electronic communications alleged herein consented to Defendant's collection, interception, use, or disclosure of the contents of the electronic communications. Nor could they—Defendant never sought to obtain Plaintiff's and the Class's consent, nor did Defendant obtain the consent of the other party, such as Spotify or other media

providers. Moreover, Defendant was not a party to any of the electronic communications sent and/or received by Plaintiff and members of the Class.

55.     Plaintiff and the Class suffered harm as a result of Defendant's violations of the Wiretap Act, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendant as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Violation of the Illinois Eavesdropping Statute**
**720 ILCS 5/14-1 *et seq*.**
**(On behalf of Plaintiff and the Illinois Subclass)**

56.     Plaintiff incorporates the foregoing allegation as if fully set forth herein.

57.     A person violates the Illinois Eavesdropping Statute when he or she knowingly and intentionally "[i]ntercepts, records, or transcribes, in a surreptitious manner any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication. . . ." 720 ILCS 5/14-2(a).

58.     The statute broadly defines "private electronic communication" to mean "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(e).

59.     By designing and programming the Bose Connect app to contemporaneously monitor, intercept, collect, record, transmit, and disclose the contents of private electronic communications that Plaintiff and the Illinois Subclass sent through Bose Wireless Products and their smartphone operating systems—including the music and audio tracks they selected to

19

play—Defendant intentionally and knowingly monitored, intercepted, collected, recorded, transmitted, and disclosed "private electronic communications," in violation of 720 ILCS 5/14-2.

60.     Plaintiff and the Illinois Subclass members intended that their Media Information would be private. Indeed, their Media Information reveals highly sensitive details about their private use of their personal headphones and speakers that Plaintiff and the Illinois Subclass expected to remain private and confidential. Beyond that, Defendant never notified Plaintiff and the Illinois Subclass that it was monitoring, intercepting, or disclosing their Media Information. Thus, there was no reason for them to believe that anybody could even potentially access, intercept, or disclose their private electronic communications in the first place.

61.     Neither Plaintiff nor the members of the Illinois Subclass ever consented to Defendant's interception, collection, recording, use, or disclosure of their private electronic communications.

62.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Illinois Subclass have been injured and seek: (1) an injunction prohibiting further eavesdropping by Defendant, (2) actual damages, including the amount paid for the Bose Wireless Products, and (3) punitive damages in an amount to be determined by the court or by a jury pursuant to 720 ILCS 5/14-6(c).

**THIRD CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act**
**815 ILCS 505/1 *et seq*.**
**(On behalf of Plaintiff and the Illinois Subclass)**

63.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA") protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

65.     The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

66.     The ICFA applies to Defendant's conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

67.     Defendant is a "person" as defined by 505/1(c) because it is a corporation.

68.     Plaintiff and the Illinois Subclass members are "consumers" as defined by 505/1(e) because they purchased merchandise—the Bose Wireless Products—for their own use.

69.     Defendant's Bose Wireless Products are "merchandise" as defined by 505/1(b) and their sale is considered "trade" or "commerce" under the ICFA.

70.     Defendant violated the ICFA by concealing material facts about their Bose Wireless Products and the Bose Connect app. Specifically, Defendant omitted and concealed that Bose Connect secretly monitors, collects, transmits, and discloses its users' highly private and sensitive Media Information to a third party data miner.

71.     Defendant's data interception, collection, and disclosure practices are material to the transactions here. Defendant featured its Bose Connect app in its marketing and advertising, offered certain features and functions to customers that were only available through Bose Connect, and charged a higher price for its Bose Wireless Products relative to comparable wireless headphones. Had Plaintiff and the Illinois Subclass known the true characteristics and behavior of the device (that it collects, transmits, and discloses private usage data to a third party data miner), they would not have purchased the Bose Wireless Products or would have paid substantially less for them.

21

72.     Defendant intentionally concealed the Bose Wireless Products' collection, transmission, and disclosure practices because it knew that consumers would not otherwise purchase their products. Indeed, Defendant's concealment of such facts was intended to mislead consumers.

73.     Defendant's concealment, suppression, and omission of material facts was likely to mislead reasonable consumers under the circumstances, and thus constitutes an unfair and deceptive trade practice in violation of the ICFA.

74.     Thus, by failing to disclose and inform Plaintiff and the Illinois Subclass about its data collection practices, Defendant violated section 505/2 of the ICFA.

75.     As a direct and proximate result of these unfair and deceptive practices, Plaintiff and each Illinois Subclass member has suffered actual harm in the form of money paid for a product that they would not have purchased had they known it would monitor, collect, transmit, and disclose Media Information to a third party data miner.

76.     As such, Plaintiff and the Illinois Subclass, seeks an order (1) requiring Defendant to cease the unfair practices described herein, (2) awarding actual damages, including the amount paid for the Bose Wireless Products, and (3) awarding reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     Plaintiff and the Class members conferred a benefit on to Defendant Bose when they purchased their Bose Wireless Products.

79.     Defendant Bose appreciates and/or has knowledge of such benefit.

80.     Given that Defendant monitored, collected, transmitted, and disclosed Plaintiff's

and the Class's Media Information without their knowledge or consent—and because Plaintiff and the Class would never have purchased the product had they known that such information would be accessible and disclosed to a third party data miner—Defendant has unjustly received and retained a benefit as a result of its conduct.

81.     Principles of equity and good conscience require Bose to return the purchase price of the Bose Wireless Products to Plaintiff and the Class.

82.     Plaintiff and the Class members seek disgorgement and restitution of any money received by Defendant as a result of the conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kyle Zak, on behalf of himself and the Class, and the Illinois Subclass requests that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Classes defined above, appointing Kyle Zak as a representative of the Classes, and appointing his counsel as class counsel;

B.     Declaring that Defendant's actions violate the Wiretap Act, the Illinois Eavesdropping Statute, and the Illinois Consumer Fraud and Deceptive Business Practices Act, and that they constitute Unjust Enrichment;

C.     Awarding injunctive relief that (i) prohibits Defendant from collecting, monitoring, transmitting, or disclosing Plaintiff's and the Classes' Media Information without consent, and (ii) requires Defendant and any third parties with such information in their possession, including Segment.io, to destroy it immediately;

D.     Awarding damages, including actual, statutory, and punitive damages, to Plaintiff and the Classes in an amount to be determined at trial;

E.      Awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses;

F.      Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent allowable;

G.      Awarding such and other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

H.      Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: July 10, 2017                               Respectfully submitted,

                                                   **KYLE ZAK**, individually and on behalf of
                                                   all other similarly situated,

                                                   By: /s/ Benjamin S. Thomassen
                                                           One of Plaintiff's Attorneys

                                                   Jay Edelson
                                                   jedelson@edelson.com
                                                   Benjamin S. Thomassen
                                                   bthomassen@edelson.com
                                                   EDELSON PC
                                                   350 North LaSalle Street, 13th Floor
                                                   Chicago, Illinois 60654
                                                   Tel: 312.589.6370
                                                   Fax: 312.589.6378

                                                   Rafey S. Balabanian
                                                   rbalabanian@edelson.com
                                                   EDELSON PC
                                                   123 Townsend Street, Suite 100
                                                   San Francisco, California 94107

**CERTIFICATE OF SERVICE**

I, Benjamin S. Thomassen, an attorney, hereby certify that I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on July 10, 2017.

<u>/s/ Benjamin S. Thomassen</u>