**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KYLE ZAK, individually and on
behalf of all others similarly situated,

*Plaintiff*,

v.

BOSE CORP., a Delaware corporation,

*Defendant.*

Case No. 17-cv-2928

Assigned Judge:
Andrea R. Wood

Designated Magistrate Judge:
M. David Weisman

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

    I.    This is Not A Wiretap Act Case ............................................................ 3

        A.    Bose Did Not Intercept an "Electronic Communication" ..................................... 3

        B.    Bose was a Party to Any Two-Party Communication ........................................... 8

    II.    Plaintiff's Illinois Eavesdropping Act Claim Must be Dismissed .............................. 10

    III.    Plaintiff's ICFA Claim is Fatally Flawed ........................................................... 11

    IV.    The Complaint Fails to State a Claim for Unjust Enrichment ..................................... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
 761 F.3d 732 (7th Cir. 2014) ................................................................................15

*Crowley v. CyberSource Corp.*,
 166 F. Supp. 2d 1263 (N.D. Cal. 2001) ..................................................................9

*Dolemba v. Illinois Farmers Ins. Co.*,
 213 F. Supp. 3d 988 (N.D. Ill. 2016) ....................................................................14

*Halperin v. Int'l Web Svcs., LLC*,
 70 F. Supp. 3d 893 (N.D. Ill. 2014) ........................................................................6

*Halperin v. Int'l Web Servs., LLC*,
 123 F. Supp. 3d 999 (N.D. Ill. 2015) ....................................................................13

*Hecker v. Deere & Co.*,
 556 F.3d 575 (7th Cir. 2009) ................................................................................11

*Hill v. Capital One Bank (USA), N.A.*,
 No. 14-CV-6236, 2015 WL 468878 (N.D. Ill. Feb. 3, 2015) ..................................4

*In re Facebook Internet Tracking Litigation*,
 No. 5:12-md-02314-EJD, 2017 WL 2834113 (N.D. Cal. June 30, 2017)..............9

*In re Google Cookie Placement*,
 806 F.3d 125 (3d Cir. 2015),
 *cert. denied sub nom. Gourley v. Google, Inc.*, 137 S. Ct. 36 (Oct. 3, 2016) ...........8

*In re Innovatio IP Ventures, LLC Patent Lit.*,
 886 F. Supp. 2d. 888 (N.D. Ill. 2012) ....................................................................7

*In re Limberopoulos*,
 No. 00 A 00250, 2004 WL 528005 (N.D. Ill. Mar. 16, 2004)..............................14

*Lipton v. Chattem, Inc.*,
 No. 11 C 2952, 2012 WL 1192083 (N.D. Ill. Apr. 10, 2012) ...............................15

*Mack v. Plaza Dewitt Ltd. P'ship*,
 484 N.E.2d 900 (Ill. App. Ct. 1985) .....................................................................14

*Minch v. City of Chicago*,
 486 F.3d 294 (7th Cir. 2007) ..................................................................................4

ii

*Muir v. Playtex Prod., LLC*,
    983 F. Supp. 2d 980 (N.D. Ill. 2013) ...................................................................14

*Phillips v. DePaul Univ.*,
    19 N.E.3d 1019 (Ill. App. (1st) 2014) ...............................................................12

*Rene v. G.F. Fishers*,
    817 F. Supp. 2d 1090 (S.D. Ind. 2011) ............................................................4, 6

*Spector v. Mondelez Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016) .................................................................12

*United States v. Ropp*,
    347 F. Supp. 2d 831 (C.D. Cal. 2004) ..............................................................5, 6

*United States v. Scarfo*,
    180 F. Supp. 2d 572 (D.N.J. 2001) .......................................................................6

## Statutes and Rules

18 U.S.C. § 2510(8) ..........................................................................................................8

18 U.S.C. § 2510(12) ....................................................................................................3, 7

18 U.S.C. § 2511(2)(d) ....................................................................................................8

720 ILCS 5/14-1(d, e) ...................................................................................................10

720 ILCS 5/14-1(g) .......................................................................................................10

## <u>INTRODUCTION</u>

This Court has a single legal question to answer at this stage regarding Plaintiff's Wiretap Act claim: Does it matter that the allegedly intercepted communication is entirely local, sent between wireless headphones and the Bose Connect App via Bluetooth—or does collecting any local communication serve as a potential basis for Wiretap Act liability if the information being communicated previously travelled in interstate commerce? Fortunately, this question has already been answered: courts have held that intercepting a local communication between a keyboard and a computer via a keylogger is ***not*** a Wiretap Act violation, even if what is typed eventually makes its way to the Internet. In his Amended Complaint, Plaintiff tries to mask this defect in his Wiretap Act claim by re-branding the multiple communications that occur when he listens to music with the Bose Connect App open as a single "listener-to-music-provider communication." But Plaintiff offers no basis for his imagined re-definition, which is opposite from what the keylogger cases held—that the keyboard-to-computer communications were ***separate*** from transmissions of the same information through email or an Internet web page. Those courts did not consider the typing of information on the keyboard and its subsequent transmission via email or Internet to be a single "user-to-Internet-Provider [or email recipient]-communication." This applies equally whether the keyboard is connected to the computer with a cord or Bluetooth, and whether the thing connected to the computer is a wireless keyboard or wireless headphones. Indeed, it would be ironic if it were permissible under the Wiretap Act to capture the text of a private email typed on a Bluetooth or wired keyboard, but illegal to capture the name of a public song playing over Bluetooth or wired headphones. But that is what Plaintiff urges the Court to conclude notwithstanding that courts have roundly rejected this notion.

A simpler way to see the misguided nature of Plaintiff's theory is to consider how the Wiretap Act would apply to an intercept device placed on a speaker wire connecting an old-fashioned speaker to a regular stereo. When the local stereo plays a song from a CD, record, or cassette tape, the Wiretap Act cannot apply because the stereo-speaker connection does not affect interstate commerce. But if the stereo were tuned to a radio station, or an Internet radio provider like Pandora or Spotify, Plaintiff would argue that the local speaker wire is now in interstate commerce. The original source of the music, however, does not change whether the device on the local wire affects interstate commerce.

This case is further removed from interstate commerce than the keylogger cases or the above scenario. Despite Plaintiff's hullabaloo in his Opposition about use of the App as a remote control to talk to the headphones (and then the headphones to the iPhone, and then the iPhone to Spotify), what the Amended Complaint actually alleges is that the App impermissibly captured the *name of the song* playing on Plaintiff's headphones. Obviously, the user is not sending the name of the song to Spotify to remotely control Spotify. The name of the song playing on the phone (from whatever source) is being provided by Plaintiff's iPhone to the headphones and *then by the headphones to the App*. For those transmissions, it doesn't matter if the song originates from Spotify or is stored locally—the same information is transmitted.

Plaintiff's attempts to save his other claims similarly fail. He defends his Eavesdropping Act claim by recycling the same flawed arguments supporting his Wiretap Act claim, adding the argument that Bose's receipt of song title was surreptitious—notwithstanding that the Bose App obviously received song titles—because it was not clearly disclosed that Bose "the entity" received that information. But this underscores that this case is not an eavesdropping case at all, but a complaint about the sufficiency of Bose's privacy policy. Plaintiff's ICFA claim is premised on

the notion that the product packaging for the Bose headphones he bought omitted information about the separate Bose Connect App. But the six-word reference to the App's existence on the back of the headphones' packaging cannot create an affirmatively false impression of the App; even if it could, the allegedly omitted information about the free optional App is not something a reasonable consumer would rely on in making a purchasing decision *about the headphones*. Nor does the Complaint adequately allege cognizable damages. Plaintiff's unjust enrichment claim fails due to the inadequacy of his other claims, and because it does not allege a detriment to Plaintiff or a recognized duty to act on the part of Bose.

Allowing this case to proceed to discovery—rather than dismissing it now—effectively makes all apps that rely on local communications and capture usage data vulnerable to the same overreaching claims. In the modern world, people use apps and smartphones to locally control all manner of devices—including thermostats (Nest), door locks (Kwikset), remote control cars (Sphero), TV sets (Anymote), health monitoring devices (Fitbit), and smart watches (Apple Watch)—and to broadcast things playing on their phone (whether locally or from the Internet) to their local television sets (Chromecast). Collecting data exchanged locally between two in-home devices is not covered by the Wiretap Act (or Plaintiff's other causes of action), even if one end of the communication may make its way through the Internet.

## I. This is Not A Wiretap Act Case

### A. Bose Did Not Intercept an "Electronic Communication"

Plaintiff's allegations cannot give rise to a Wiretap Act violation first because the alleged "interception" does not occur on a system that affects interstate commerce. *See* 18 U.S.C. § 2510(12). The alleged interception in this case occurs when the Bose Connect App collects song title information it receives via Bluetooth from Plaintiff's Bose wireless headphones. Mem. at 5-7. The Complaint does not allege otherwise, and the Opposition effectively concedes as much.

*See, e.g.*, Opp. at 7. Plaintiff nevertheless argues that the Act's interstate commerce requirement is satisfied because the local communication between the headphones and the App is a "segment" or "component" of a larger transmission, that at some point does affect interstate commerce. *See id.* at 11, 12. This is wrong.[1]

The Opposition does not identify a single case that says a local communication such as the one here can serve as a basis for Wiretap Act liability if the information collected previously or subsequently travels in interstate commerce, because no such case exists. In fact, existing case law dictates the opposite result. In *Rene v. G.F. Fishers*, the court dismissed the Wiretap Act claim against defendants that allegedly intercepted a coworker's keystrokes as she accessed her personal email and checking accounts on the Internet on the ground that the interception of those keystrokes did not involve a system that affects interstate commerce. 817 F. Supp. 2d 1090, 1092 (S.D. Ind. 2011). The court explained that to violate the Wiretap Act, the interception "must occur while the transmission is traveling through a system that affects interstate or foreign commerce." *Id.* at 1094. The fact that the keystrokes were traversing the Internet seemingly simultaneously as plaintiff

---

[1] Plaintiff does not dispute the accuracy of Bose's description in its opening memo of how iOS, apps or Bluetooth operate for purposes of the transmissions at issue, or question the reliability of the materials Bose cites in describing such operation. Rather, he calls such discussion "academic" because his "allegations *only* depend on Spotify sending a specific communication to a user . . . which is communicated through the internet, through a user's phone, through a connected Bluetooth headset, and then to the App itself." *See* Opp. at 7. He nevertheless later argues that the Court should not consider the materials Bose references. *See id.* at 9 n.6. But courts routinely take notice of materials like Apple's technical documentation regarding its own operating system and well established and undisputed scientific facts like how Bluetooth operates. *See* Mem. at 5 n.5, 9 n.15. Plaintiff's arguments for why this Court should not do so fail. The single case cited by Plaintiff, *Hill v. Capital One Bank (USA), N.A.*, does not stand for the proposition that "non-governmental websites are not properly subject to notice." *See* Opp. at 9, n.6. It merely says that courts will not take judicial notice of "website printouts" absent explanation why the printouts are materials appropriate for judicial notice, "*i.e.*, . . . [they are] generally know[n], or com[ing] from sources whose accuracy cannot reasonably be questioned." *Hill*, 2015 WL 468878, at *5 (N.D. Ill. Feb. 3, 2015). Here, Bose provided that explanation, and Plaintiff does not question the accuracy of the materials relied on. Nor is it the case that the Court can only consider the specific webpages Plaintiff references. *See Minch v. City of Chicago*, 486 F.3d 294, 300 (7th Cir. 2007) (when complaint refers to and rests on a document not attached to the complaint, a court can consider that document in ruling on a motion to dismiss as long as the authenticity of the document is unquestioned).

accessed online banking or sent emails did not change the fact that the communication was traveling through a system (the keyboard-computer system) that did not affect interstate commerce when allegedly intercepted. *United States v. Ropp* likewise found that a keyboard-computer system did not affect interstate commerce, even when composing emails transmitted over the Internet. 347 F. Supp. 2d 831, 837-38 (C.D. Cal. 2004). The same reasoning applies here—the local headphones-App communication does not itself affect interstate commerce, even where the information coming to the headphones from the iPhone originated from the Internet.

The Opposition does not dispute that *Rene*, *Ropp*, and similar cases require an interception occur while the communication is traveling through a system that affects interstate commerce. Instead, it seeks to avoid the outcome such requirement dictates by redefining the relevant "communication." Plaintiff declares that the transmission from Spotify to Plaintiff's iPhone, from Plaintiff's iPhone to his headphones, and from his headphones to the App is a single communication (which he calls the "listener-to-music-provider communication"), just with multiple "component[s]," "segments," "pathways" or "leg[s]". *See* Opp. at 10-12. He then says that this self-minted "communication," unlike the communications in *Rene* and *Ropp*, "***could not have been transmitted or received without an internet connection*** to Spotify's servers." Opp. at 14 (emphasis in original).

Plaintiff's argument is not supported by case law, or common sense. The same ***could*** have been said in *Rene* and *Ropp* ***if*** the transmissions from the keyboard to the computer and from the computer to the webpage for the online checking account or email provider were re-branded a single "communication" with multiple "legs." But the point of those cases was that they were ***not*** a single communication; although the keyboard-computer system was "connected to a larger system—the network—which affects interstate or foreign commerce, the transmission in issue did

5

not involve that system." *Ropp*, 347 F. Supp. 2d at 838.  Plaintiff's argument that the transmission from Spotify ultimately to the App is a single communication because the App could never receive information without an Internet connection also fails as a matter of common sense.  If a person set up a video camera behind someone's computer monitor to record emails being read on the screen it would not be a Wiretap Act violation even though the emails being read "could not have been transmitted or received without an internet connection." *See* Opp. at 14.

The reasoning of the keylogger cases applies squarely here.  Plaintiff's iPhone may be connected to a larger system—the Internet—but the transmission at issue did not involve the Internet.  It involved a local Bluetooth loop between the headphones and the App.  As Plaintiff concedes, the App functions the same way and captures the same information even if a user is playing music without any connection to the Internet.  *See id.* at 14.  Thus, like in *Ropp*, "the network connection is irrelevant to the transmissions, which could have been made on a stand-alone [iPhone] that had no link at all to the internet or any other external network." *Ropp*, 347 F. Supp. 2d at 838; *see also United States v. Scarfo*, 180 F. Supp. 2d 572, 581 (D.N.J. 2001) (finding that software that did not search for and record data entering or exiting the computer from the transmission pathway through the modem attached to the computer did not violate Wiretap Act).

Limiting the putative class to users of "*streaming* audio" does not cure this flaw as the Opposition argues.  *See* Opp. at 14 (emphasis in original).  This is not a class issue, it is a definition of "electronic communication" issue.  Just as the court in *Rene* did not allow plaintiff's Wiretap Act claim to proceed where she was typing on the Internet (such as "accessing her email and personal checking accounts") but not when she was typing locally, Plaintiff's claim cannot proceed merely because he purports to limit his class to transmissions that originated from the Internet.  *See Rene*, 817 F. Supp. 2d at 1092; *see also Halperin v. Int'l Web Svcs., LLC*, 70 F. Supp. 3d 893, 902

(N.D. Ill. 2014) (rejecting Wiretap Act claim where software captured a "transmission that require[s] no connection to the outside world," even though the information allegedly captured originated from the world wide web).

Plaintiff's statutory argument fails for the same reason. The Wiretap Act defines "electronic communication" as any transfer of data transmitted in whole or in part by a system that affects interstate commerce. 18 U.S.C. § 2510(12). Plaintiff argues that because the communication between the headphones and the App contains information that originated from Spotify, the communication "in part" affects interstate commerce. Opp. at 12. This again relies on the transmission from Spotify to his iPhone, the transmission from his iPhone to his headphones, and the transmission from his headphones to the App being a single communication. Plaintiff identifies no precedent that supports interpreting "electronic communication" in such a way. He points instead to cases stating the general propositions that the Wiretap Act defines "electronic communication" broadly, or that the Internet itself affects interstate commerce. *See id.* at 11. Such statements do not change the fact that no court has endorsed defining "electronic communication" to include anything that previously or subsequently touches the Internet. They have taken the opposite approach—not viewing the multiple "pathways" (as Plaintiff calls them) of a transmission as a single "communication" for purposes of the Wiretap Act.[2]

---

[2] Plaintiff calls it a "distraction" that no court has ever found a Wiretap Act violation in the context of Bluetooth communications such as this, and counters that Bose does not cite any cases expressly exempting Bluetooth communications from the Act. Opp. at 12-13 n.8. But nor are there any cases expressly exempting whispered communications from the Act, and that does not mean it applies to such communications. Plaintiff does not dispute that Bluetooth is a local connection between devices within close range, or that the song title information does not traverse the Internet as it is passed from his headphones to the App. *See* Mem. at 13-15. Like keyboard-computer communications, such communications do not affect interstate commerce. *Id.* The fact that the FCC may set Bluetooth frequencies is irrelevant (*see* Opp. at 12-13 n.8), as is the fact that another case considered whether network analyzers that analyzed traffic on "wireless networks that access the Internet" potentially violated the Wiretap Act. *In re Innovatio IP Ventures, LLC Patent Lit.*, 886 F. Supp. 2d 888, 890 (N.D. Ill. 2012). If

This case is further removed from interstate commerce than the keylogger cases because the information Plaintiff claims Bose is intercepting is not even the same information Plaintiff alleges users transmit in interstate commerce. Plaintiff's complaint is that Bose collects "the titles of the music and audio files consumers choose to play through their Bose wireless products." Compl. ¶ 3; *see also id.* ¶ 24 ("Bose designed the [App] to collect the names of music and audio tracks the listener selects"). Even under Plaintiff's "single communication" theory, the user is not sending a song title to Spotify to remotely control Spotify, nor is the App capturing the audio file sent by Spotify.[3] The name of the song playing on the phone is provided by the phone to the headphones and then by the headphones to the App, regardless of the source of the track or whether the track is streaming or being played locally. Contrary to Plaintiff's suggestion, the relevant "communication loop" in this case does ***not*** "necessarily utilize[] the internet." *See* Opp. at 12.

## B.    Bose was a Party to Any Two-Party Communication

The alleged conduct in this case also cannot violate the Wiretap Act because Bose was either a party to any communication or there was no party other than the user. Plaintiff does not dispute that "a communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *In re Google Cookie Placement*, 806 F.3d 125, 143 (3d Cir. 2015), *cert. denied sub nom. Gourley v. Google, Inc.*, 137 S. Ct. 36 (Oct. 3, 2016). And he concedes that parties to a communication cannot unlawfully intercept a communication under the Wiretap Act. Opp. at 15; *see also* 18 U.S.C. § 2511(2)(d). Plaintiff nevertheless argues that

---

anything, *In re Innovatio* supports dismissal. There, in concluding that communications over unencrypted Wi-Fi networks were not subject to the Act, the court explained that "it is not the court's job to update the law to provide protection for . . . ever changing technology. Only Congress, after balancing any competing policy interests, can play that role." *Id.* at 894.

[3] This key distinction—that what is being communicated between Spotify and the user's phone (music or audio files) differs from what is allegedly being collected by the App (only artist and track names)—also illustrates that it is not the "content" of the relevant (interstate) communication that is being allegedly intercepted, as also required for a Wiretap Act claim. *See* 18 U.S.C. § 2510(8).

the Wiretap Act's party exception does not apply here because Bose "the *App*" is not the same as "Bose *the entity*," and just because the headphones were communicating with the Bose Connect App that does not make "Bose *the corporate entity*" a party to the communication. Opp. at 14, 15 n.11 (emphasis in original).

This Court should reject the artificial distinction Plaintiff asks the Court to draw. Such purported distinction is inconsistent with caselaw, which has looked at the context of users communicating with a company's computer server. *See In re Facebook Internet Tracking Litigation*, No. 5:12-md-02314-EJD, 2017 WL 2834113, at *4 (N.D. Cal. June 30, 2017) (finding where the parties to a communication were a "web user and a Facebook server . . . Facebook has not 'intercepted' the communication within the meaning of the Wiretap Act because it is 'a party to the communication'"); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1266 (N.D. Cal. 2001) (finding that Amazon was a party to the communication where a person entered their name, address, and telephone number, email address and credit card number into Amazon's website).

The situation with apps is analogous. When a user ***types*** in data to an app on his phone—the app provider is the second party to the communication.[4] You do not enter information on the Facebook App or the Twitter App, and expect that data is staying on the phone. If you request the weather from your Weather Channel app, you know you are sending a request to the Weather Channel. The same is true in an Internet of Things world when you cause a ***stream of data*** to go to an app, even if you are not typing it. If you wear a body monitor, and connect it to your Fitbit app, you transmit your data to Fitbit even though you are not typing it in yourself—the device just sends it. And when you connect your Bose headphones to your Bose Connect App, the data going

---

[4] Plaintiff's argument here also contradicts his assertion that multiple distinct communications should be treated as the same communication for purposes of the Act's interstate commerce requirement. Plaintiff cannot have it both ways—conflating items when it suits him and drawing distinctions when it does not.

into the App is collected by Bose. The privacy policy is clear on that point. *See* Mem. at 4, 17. And if the app provider (here, Bose) is not the second party, any user input would be a one-party communication between one device owned by the user (the headphones) and the App—which by definition cannot be intercepted under the Wiretap Act.

## II. Plaintiff's Illinois Eavesdropping Act Claim Must be Dismissed

As discussed in Bose's initial memo, Plaintiff's Eavesdropping Act claim fails for the same reasons his Wiretap Act fails, and because any interception was not surreptitious. *See* Mem. at 19-20. In response, Plaintiff argues that the requirement that the allegedly intercepted communication be truly private does not apply here because "Plaintiff alleges an interception of private electronic communications, not private conversations." Opp. at 18. But both require that a party intends the communication be private "under circumstances reasonably justifying that expectation," which is not the case where the App collects publicly available audio track information from commercial songs or podcasts—especially ones obtained from commercial streaming providers offering access to the general public. *See* 720 ILCS 5/14-1(d, e). It also ignores the fact that the Eavesdropping Act does not apply to a party to the communication. *See infra* § I.B; Mem. at 16.

Plaintiff's Eavesdropping Act claim fails for the additional reason that Bose did not obtain song titles "by stealth or deception, or . . . through secrecy or concealment." 720 ILCS 5/14-1(g). When a person listens to an audio track while running Bose Connect, the track information appears on the App. Plaintiff does not dispute this. Instead, he argues that while it may have been obvious that the App "processed and displayed" song title information, it was not clear that Bose "the entity" received the information, and that the App's privacy policy statement—which says that the Bose App collects usage information—was not clear enough. Opp. at 19-20. This argument only underscores that this is not a case about eavesdropping. Even it were assumed not to be commonly understood by app users that the app's provider receives information going to the app itself,

Plaintiff's complaint is really that Bose did not provide clear enough notice of this fact. If that were enough to potentially constitute "stealth or deception," any allegation that a privacy policy did not adequately disclose information would give rise to an Eavesdropping Act claim.[5]

### III.  Plaintiff's ICFA Claim is Fatally Flawed

Plaintiff's ICFA claim also must be dismissed. Plaintiff argues that the package for his Bose headphones omitted information about the separate App, and that if such information had been disclosed it would have impacted what he would have paid for the headphones—rather than just whether he would have downloaded the free App. *See* Opp at. 20-21. In Plaintiff's view, alleging Bose failed to disclose the "App's information collection practices" to potential headphone purchasers is a "classic [deceptive] omission claim." *Id.* at 21.

Plaintiff has it backwards. The "classic" ICFA deceptive omission claim—exemplified by the "deceptive packaging" cases that the Opposition relies on—involves alleged omissions concerning the product for sale, such as latent defects that interfere with purchasers' expectations for *that* product.[6] Plaintiff does not allege the Bose headphones packaging omitted anything about the product being sold. The thing he complains about—the App—is not the product he purchased. The only suggestion that Plaintiff was even aware of the App prior to his purchase is a single disclosure he allegedly read on the headphone packaging: a six-word note printed on the back that

---

[5] Under Plaintiff's approach, even if a privacy policy were crystal clear, Plaintiff could prevent an Eavesdropping Act claim from being resolved on a motion to dismiss simply by alleging that the information was collected without proper notice and not referencing the privacy policy in the complaint, and then argue as Plaintiff does here that the privacy policy cannot be considered because it was not referenced in the complaint. *See* Opp. at 17. Here, Bose's privacy policy can be considered because it is part of the App itself, which Plaintiff repeatedly refers to, and even provides pictures from. *See, e.g.,* Compl. ¶¶ 14, 15, 26; *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (affirming consideration on motion to dismiss of documents referenced in complaint and central to plaintiffs' claim).

[6] Plaintiff's Opposition does not identify a single case sustaining an ICFA claim based on alleged omissions concerning a product or service separate from the one purchased by plaintiff (nor is Bose aware of any).

read, "Enhance headphones with Bose Connect app." *See* Compl. ¶ 35 & Fig. 1.[7] Thus, Plaintiff's ICFA claim depends on (1) whether the Complaint sufficiently alleges that this back-of-the-box disclosure gave consumers an affirmatively false impression of the App, and (2) if so, whether the allegedly omitted information is the kind on which a consumer would rely in making a purchasing decision ***about Bose headphones***. *See* Mem. at 20, 22. The answer to both questions is no.

As to the first question, the disclosure on Plaintiff's headphone package is generic. It does no more than indicate the existence of a companion App with unspecified functionality.[8] Neither that disclosure, nor any other factual allegation in the Complaint, substantiates Plaintiff's conclusory assertion that ***he*** "understood" his headphones to "require[] the Bose Connect app in order to be fully functional"—the assumption on which Plaintiff's deceptive omission theory is based. Compl. ¶ 35. This is particularly the case given that deceptive omission claims must be pled with heightened particularity, to ensure that fraud is not merely a possibility but the "necessary or probable inference" from the facts alleged. Mem. at 20-22.[9]

Failure to disclose any information about a product can create a false impression because consumers who decide to purchase that product have already formed some impression to start with.

---

[7] While the Complaint discusses other App-related disclosures, those that were not seen by Plaintiff until after he purchased the Bose headphones, such as in-box instructions (*see, e.g.*, Compl. ¶¶ 19, 35-36)—or that Plaintiff does not allege he has seen at all (*see, e.g.*, *id.* ¶¶ 17, 20)—cannot form the basis of an ICFA claim. *See* Mem. at 23.

[8] Bose is not arguing that not disclosing additional details regarding the App's operation was an "oversight." *See* Opp. at 22. The point is that ICFA does not impose an obligation to supplement high-level, general statements with more detailed information unless the general statement would otherwise create an affirmatively false impression—not merely an "incomplete" one. *See, e.g.*, *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1030 (Ill. App. (1st) 2014); *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (ICFA should "not be used to transform nondeceptive and nonfraudulent omissions into actionable affirmations").

[9] The purpose of Rule 9(b) is "to protect [] defendant[s] from the potential stigmatic injury that comes with alleging fraud" by holding plaintiffs to a higher standard, "ensur[ing] that such fraught allegations are not lightly leveled." *Spector*, 178 F. Supp. 3d at 671 (noting that under Rule 9(b), the required "level of particularity" is not necessarily limited to listing "the neutral facts necessary to identify the transaction").

In this case, however, the alleged omission concerns an entirely separate thing. Plaintiff could only form an impression about the App to the extent he was made aware of it at all, and that impression would be formed based on the disclosure he saw—a statement that merely references the existence of the App, without describing the App's functionality at all, let alone in a way that creates an "affirmatively false" impression requiring a supplemental disclosure.[10]

As to the second question, even if one assumes *arguendo* that the Complaint alleges a deceptive omission with regard to Bose Connect, Plaintiff's ICFA claim nonetheless fails because that omission cannot be material. Plaintiff's materiality argument relies on his characterization of the App as one of six advertised "primary features" of his Bose headphones that was "necessary for the headphones 'to be fully functional,'" and his assertion that he "never would have purchased" them had he known how the App operates. Opp. at 4, 22-23. These conclusory statements do not stand up to scrutiny of the Complaint's factual allegations. As explained above, the only basis identified in the Complaint for Plaintiff's pre-purchase knowledge of the App is the generic statement on the headphones package itself, which does not provide any meaningful information a consumer could rely on in deciding whether to purchase the headphones. And even if Plaintiff had alleged he was aware of the App's substantive features, the "remote control" functionality he complains about is optional and secondary. *See* Mem. at 4. The App is not necessary to control the music playing on Bose headphones—it is an alternative to the normal

---

[10] While it is improper to consider App-related disclosures he did not allege he saw prior to his purchase (*see supra* n.8), his ICFA claim would fare no better even if such disclosures are considered. Bose Connect users were on notice of the App's functionality: both the App's interface and Bose's related disclosures made clear that the App accesses song title and artist information, and Bose's Privacy Policy (available within the App) disclosed that Bose may monitor, collect and share information from the App. *See* Mem. at 4, 21. Since the allegedly concealed information was in fact ascertainable from within the App itself, Plaintiff's deceptive practices claim "do[es] not even rise to the level of plausibility." *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1007 (N.D. Ill. 2015) (dismissing ICFA claim where allegedly deceptive software functionality was apparent from program's interface).

controls available through the source music app and the headphones. *Id.* A reasonable consumer who did not want the App to collect information could simply not use the App to control music, with no impact on his or her use of the headphones. Given the lack of non-conclusory allegations regarding Plaintiff's knowledge of or reliance on the optional App's functionality in deciding whether to buy his headphones, the alleged omission is immaterial as a matter of law.[11]

Lastly, Plaintiff's ICFA claim should be dismissed for failure to adequately allege actual damages. Plaintiff purports to satisfy this element by pleading that he was deprived of the "benefit of the bargain" when he purchased his Bose headphones because the product's value was inflated by the alleged deceptive omissions. Opp. at 24. Again, Plaintiff relies wholly on cases involving alleged defects or undisclosed issues concerning the purchased product itself. *See, e.g.*, *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (actual damages adequately alleged where false advertising claim on product packaging meant product was worth less than if claim was true).

In contrast, the "bargain" Plaintiff sought in purchasing the Bose wireless headphones was the headphones themselves, and there is no allegation in the Complaint that those do not function according to his expectations. Plaintiff's sole response is to assert he was deprived of a "fully functional" pair of headphones because they were missing an advertised "feature," *i.e.*, Bose Connect. But nothing about this feature was disclosed prior to purchase. Thus, he could not have been deprived of any value he expected to obtain at the time of his purchase. *See Dolemba v.*

---

[11] Plaintiff incorrectly suggests that the Court should defer until summary judgment the question of whether the App's functionality was a material factor in his purchase decision. Materiality is an objective determination, "measured by what a reasonable person would do under [the] circumstances," *In re Limberopoulos*, No. 00 A 00250, 2004 WL 528005, at *2-3 (N.D. Ill. Mar. 16, 2004), and can be resolved on the pleadings where allegations do not plausibly establish materiality. *See, e.g.*, *Mack v. Plaza Dewitt Ltd. P'ship*, 484 N.E.2d 900, 906 (Ill. App. Ct. 1985) (dismissing ICFA claim for failure to adequately allege materiality because the alleged misrepresentation was not "of such essential importance" to the transaction that it would not have occurred if the information were known).

*Illinois Farmers Ins. Co.*, 213 F. Supp. 3d 988, 998 (N.D. Ill. 2016) (dismissing ICFA claim where alleged damages were either "trifling in amount" or non-economic). Further, even if diminution of value damages were cognizable, the Complaint still fails because it does not even attempt to apportion any value to the App apart from the cost of the Bose headphones themselves. *See* Mem. at 24; *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (plaintiff failed to plead he "paid more than the actual value of the merchandise he received," where he had conclusorily asserted he could have "obtained a better price in the marketplace" and proposed "true" product values that were "mere[ly] guesses void of any substantial analysis").

## IV. The Complaint Fails to State a Claim for Unjust Enrichment

Plaintiff's unjust enrichment claim should fail for the reasons previously set forth in Bose's opening memorandum. Mem. at 24-25. Plaintiff does not dispute that if his other claims based on the same conduct fail, the unjust enrichment claim cannot stand. *See id.* Nor does he cite any authority to dispute Bose's contention that he failed to allege an independent basis establishing a duty to act on the part of Bose, providing another ground for dismissal. *See id.* at 25; Opp. at 25. The unjust enrichment claim should also be dismissed because Plaintiff does not adequately allege a "detriment," for the same reasons as described with respect to the actual damages element of his ICFA claim. While "loss or damage is not an element of unjust enrichment," a plaintiff must nonetheless identify a "detriment," which can be "treated as the functional equivalent of actual damages" at the motion to dismiss stage. *See Lipton v. Chattem, Inc.*, No. 11 C 2952, 2012 WL 1192083, at *4 (N.D. Ill. Apr. 10, 2012). He has not done so.

## <u>CONCLUSION</u>

For the foregoing reasons, and those stated in Bose's initial memorandum, this Court should grant Bose's Motion to Dismiss the Amended Complaint with prejudice.

Dated:  September 26, 2017                   By:  /s/ Bart Huff_____
                                             Bart Huff (6225211)
                                             bart@zwillgen.com
                                             ZWILLGEN PLLC
                                             300 N LaSalle St, Suite 4925
                                             Chicago, IL  60654
                                             (312) 685-2278 (telephone)

                                             Marc Zwillinger (6226447)
                                             marc@zwillgen.com
                                             Jeffrey Landis (admitted *pro hac vice*)
                                             jeff@zwillgen.com
                                             Nicholas Jackson (admitted *pro hac vice*)
                                             nick@zwillgen.com
                                             ZWILLGEN PLLC
                                             1900 M. Street NW, Suite 250
                                             Washington, DC 20036
                                             (202) 706-5205 (telephone)
                                             (202) 706-5298 (facsimile)

                                             *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that on September 26, 2017, I caused the

foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which

will send notification of such filling to the following attorneys of record:

Jay Edelson
Benjamin Thomassen
Rafey S. Balabanian
EDELSON PC
350 North LaSalle, Suite 1300
Chicago, IL 60654
jedelson@edelson.com
bthomassen@edelson.com
rbalabanian@edelson.com

*/s/ Jeffrey Landis*
Jeffrey Landis

17