# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KYLE ZAK, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | No. 17-cv-02928 ) ) Judge Andrea R. Wood |
| BOSE CORP., a Delaware corporation, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kyle Zak, a consumer of Bose wireless products, alleges that Defendant Bose Corp. ("Bose") designed the Bose Connect mobile application (the "App") to monitor and collect information about the music and audio files consumers choose to play through their Bose wireless products and transmit such data to third parties without consumers' knowledge or consent. Zak has brought claims on behalf of a putative class of purchasers of certain Bose wireless products who downloaded and used the App, alleging violations of the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* (Count I); the Illinois Eavesdropping Statute, 720 ILCS 5/14-1 *et seq.* (Count II); and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count III). Zak also asserts a common law unjust enrichment claim (Count IV). Before the Court is Bose's motion to dismiss the First Amended Complaint ("FAC") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 28.) For the reasons discussed below, Bose's motion is granted in part and denied in part.

## BACKGROUND[1]

Bose manufactures and sells high-end wireless headphones and speakers. Consumers of those products use their wireless headphones or speakers with their smartphones in order to listen to music streamed to their phone from music-streaming services such as Spotify or Apple Music.[2] Users of certain models of Bose wireless headphones and speakers at issue here ("Wireless Products") can access additional features of those products by downloading the App. Bose advertises the App on the outside packaging of the Wireless Products and on its website, claiming that the App enhances the Wireless Products and allows a user to unlock additional features and functions of their products. Once downloaded, the App enables users to connect their smartphones to their Bose Wireless Products via a Bluetooth connection so that the user can access and control the products' settings and features through the App. The App also acts as a remote control, allowing the user to pause, resume, rewind, and skip songs played through Spotify. The App also displays the track title, artist, and album playing ("Media Information").

The problem, according to Zak, relates to this Media Information. The FAC alleges that Bose also designed the App to "(i) collect and record titles of the music and audio files consumers choose to play through their Bose wireless products and (ii) transmit such data along with other personal identifiers to a third-party data miner without consumers' knowledge or consent." (Compl. ¶ 3.) Zak alleges that Bose is not a party to the communication of the Media Information, but rather "intercepts" the contents of the communication between the user and Spotify. Zak further alleges that Bose does not have consent from either party to intercept the data.

---

[1] For the purposes of Bose's motion to dismiss, the Court takes the well-pleaded allegations in the FAC as true and draws all reasonable inferences in Zak's favor. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

[2] For the sake of brevity, the Court will hereinafter refer to various music streaming services collectively as "Spotify."

Once the App has intercepted the user-to-Spotify communications, the App "automatically disclose[s] and tramit[s] Media Information associated with those communications to third party companies, including a . . . sophisticated data mining and analysis company" called Segment.io, of which Bose is a customer. (*Id.* ¶ 27.) As a customer of Segment.io, Bose may then access the data and link the Media Information to the particular Bose product's serial number and the registration information (*i.e.*, name and email address) for the particular user, thus enabling Bose to create a detailed profile about individual users and their music listening habits.

**DISCUSSION**

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.'" *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the "well-pleaded allegations must 'plausibly give rise to an entitlement of relief.'" *Id*. at 174 (quoting *Iqbal*, 556 U.S. at 679). "[T]he plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

I.  **Wiretap Act Claim**

The Wiretap Act makes it unlawful, in relevant part, for any person to "intentionally intercept[] [or] endeavor[] to intercept . . . any . . . electronic communication." 18 U.S.C.

§ 2511(1)(a). The Wiretap Act also prohibits the intentional disclosure of such communications where the disclosing party knows or has reason to know "that the information was obtained through the interception of any . . . electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c). The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Electronic communication" is defined, in relevant part, as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. § 2510(12). The Wiretap Act further provides that it is not unlawful for a person to intercept an electronic communication "where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. §2511(2)(d).

Bose makes two arguments why the FAC does not plead a Wiretap Act violation. First, Bose argues that the communication that is the subject of the alleged interception is not "transmitted in whole or in part by a . . . system that affects interstate or foreign commerce," as required to qualify as an "electronic communication" under the Wiretap Act. 18 U.S.C. § 2510(12). According to Bose, the only communication in which the App is involved is the communication over a local Bluetooth connection between the Bose Wireless Product and the App.[3] Bose argues that the communication via Bluetooth between the App and the Wireless

---

[3] Bose argues that this is the only conceivable communication that the App is involved in because the Apple iPhone iOS operating system prevents third-party apps from accessing information from other apps. The App is therefore unable to access any information from Spotify, but rather is only able to access information from the Bose Wireless Product with which it is paired via Bluetooth. In support of its

4

Product is not subject to the Wiretap Act because it is a local communication that does not affect interstate or foreign commerce, as Bluetooth is a local system that transmits information between devices in close physical proximity without the need for a network or internet connection. Second, Bose argues that because the only communication involving the App occurs between the App and the user's Wireless Product, the communication is not subject to the Wiretap Act because Bose is a party to this communication.

The Court need not opine on whether a Bluetooth transmission is a transmission affecting interstate commerce or on the functionality of smartphone operating systems because the FAC fails to plead facts sufficient to establish that Bose is not a party to the communication, as required for a Wiretap Act violation. Courts are clear that in the context of the Wiretap Act, "a party to the conversation is one who takes part in the conversation." *In re Google Cookie Placement*, 806 F.3d 125, 143 (3d Cir. 2015); *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) (same); *see also United States v. Eady*, 648 F. App'x 188, 191 (3d Cir. 2016) (a defendant is a "party" where "his presence is known to other participants"). That is, the relevant inquiry is whether the defendant is a participant in the conversation, as opposed to a non-participant that uses other means to gain access to—*i.e.*, intercept—the communication. *United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) ("Interception connotes a situation in which by surreptitious means a third party overhears a telephone conversation between two persons."). Indeed, a defendant is a "party" to the communication within the meaning of the Wiretap Act when the defendant is a participant, even if the defendant was not an ***intended*** participant, and even if the

---

argument, Bose submits for judicial notice documents that are publicly available from Bluetooth and Apple regarding Bluetooth technology and Apple iOS security, respectively. In his reply, Zak disputes the Court's ability to take judicial notice of such documents. The Court need not resolve this dispute because the Court does not need to take judicial notice of any of the documents cited by Bose in reaching its decision.

defendant became a participant "through a fraud in the inducement." *In re Google*, 806 F.3d at 143; *see also Pasha*, 332 F.2d 193 (holding that where federal agents answered telephone calls intended for the criminal defendant and impersonated the criminal defendant during the calls, the agents did not violate the Wiretap Act because the agents were parties to the communication even though they were not the intended party).[4]

Here, the FAC fails to allege facts suggesting that Bose is not a party to the communication within the context of the Wiretap Act. Though the FAC alleges in conclusory fashion that Bose is not a party to the communication, this is contradicted by the FAC's factual allegations, and the Court need not give legal effect to conclusory allegations that are contradicted by the pleader's actual description of what happened. *E.g.*, *McCauley v. City of Chicago*, 671 F.3d 611, 617–18 (7th Cir. 2011). For example, the FAC alleges that the Spotify server communicates the Media Information to the mobile device, and the App then "accesses and displays that information" as a function of the App. (Compl. ¶ 26). The FAC includes a screenshot of the App functioning on the user's mobile device by displaying the Media Information. (*Id*.) The FAC further alleges that the App sends a user's request for a particular song, and in turn processes the music provider's provision of song information in return. (*Id*. ¶¶ 26, 29.) These allegations make clear that the App is a fully-acknowledged participant in the communication of the Media Information—indeed, receiving and displaying the Media Information is a primary function of the App. These facts contradict the FAC's conclusory allegation that Bose is not a party to the

---

[4] When Congress amended the federal Wiretap Act to its current form, "Congress specifically mentioned *Pasha* in its discussions of the 'party to the communication' provision," stating that a "'party would mean the person actually participating in the communication.'" *See Clemons v. Waller*, 82 F. App'x 436, 441–42 (6th Cir. 2003) (quoting S. Rep. No. 90-1097 at 93–94 (1968)); *U.S. v. Campagnuolo*, 592 F.2d 852, 862–63 (5th Cir. 1979) ("It is clear from this passage that Congress intended to reaffirm the result in *Pasha* . . . ."); *In re Google*, 806 F.3d at 144 (same).

communication of the Media Information.[5] Moreover, Zak's Brief in Opposition to the Motion to Dismiss ("Opposition Brief") further clarifies the FAC's allegations[6] and makes clear that in fact "Bose Connect is ***part of the listener to music provider communication***[,]" indeed "the App ***is supposed to function as a leg in the listener-to-music provider communication*** pathway—one that can be used to request new material or view audio track information." (Opp. Br. at 7 n.5, 8.) The Opposition Brief further explains that "information is . . . ***routed to the App*** where track information—e.g. song name, album, and artist information—is displayed." (*Id.* at 1.)

It is clear from the facts alleged in the FAC, and clarified in the Opposition Brief, that the App is in fact a known participant in—and intended recipient of—the communication of the Media Information. These factual allegations contradict Zak's conclusory allegation that Bose is not a party to the communication. To the extent Zak's real issue is with the fact that Bose allegedly collects and discloses the Media Information that it legitimately receives, this complaint falls outside the purview of the Wiretap Act. *See e.g.*, *In re Google*, 806 F.3d at 143 ("The

---

[5] In his Opposition Brief, Zak argues that while the App is an intended recipient of the communication at issue, Bose the corporation is not. But Zak does not point to any facts alleged to support such a distinction, nor can the Court identify any in the FAC. Nor does Zak allege that Bose, though a party to the communication, nevertheless intercepted the communication "for the purpose of committing any criminal or tortious act" independent from the alleged interception, as required to remove a defendant from the party-to-the-communication exception to the Wiretap Act. 18 U.S.C. § 2511(2)(d); *see also Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353–54 (7th Cir. 1995) (affirming dismissal of Wiretap Act claim where defendant was a party to the communication and complaint did not allege that defendant intercepted communication for the purpose of committing a crime or tort); *Caro*, 618 F.3d at 100 (affirming dismissal and holding "that a cause of action under § 2511(2)(d) requires that the interceptor intended to commit a crime or tort independent of the act of recording itself").

[6] The Supreme Court has made clear that "[t]hough . . . a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[] [requires that] the complaint . . . be construed generously, [a court] may use [a plaintiff's reply] brief to clarify allegations in [the] complaint whose meaning is unclear." *Pegram v. Herdrich,* 530 U.S. 211, 230 n.10 (2000). In *Pegram*, the Court noted that though a statement in the plaintiff's complaint came close to stating a claim, the statement was vague and difficult to interpret in isolation, but that "[a]ny lingering uncertainty about what [the plaintiff] has in mind is dispelled by her brief," which clarified plaintiff's position and made clear that she had not stated a claim. *Id*. at 230.

Wiretap Act is a wiretapping statute, and just because a scenario sounds in fraud or deceit does not mean it sounds in wiretapping."). Zak's Wiretap Act claim must therefore be dismissed. *See, e.g.*, *id.* (affirming dismissal of Wiretap Act claim where facts alleged established that defendant was a party to the communication); *Caro*, 618 F.3d at 97 (same). The Court will dismiss the claim without prejudice in the event that Zak can allege a set of facts to suggest that Bose is in fact not a party to the communication or that Bose, while a party, nevertheless intercepted a communication with the purpose of committing a crime or tort independent from the alleged interception.

## II. Subject-Matter Jurisdiction

Because Zak's federal claim is dismissed, the Court must consider whether it has subject-matter jurisdiction over the remaining state law claims. If the Court's jurisdiction over the state law claims is premised only on its subject-matter jurisdiction over the federal claim, the Court must decide whether to "relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). The FAC pleads that in addition to federal question jurisdiction over the Wiretap Act claim, the Court also has subject-matter jurisdiction over the entire action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). (Compl. ¶ 10.) Bose did not address this assertion in its motion to dismiss, but posits in a joint status report filed by the parties that the Court lacks subject-matter jurisdiction under CAFA because, if the federal Wiretap Act claim is dismissed, "the Complaint would not adequately establish that the putative class satisfies the amount-in-controversy requirement [] as to the remaining claims." (Joint Status Rep. at 2, Dkt. No. 22.)

CAFA provides that a federal district court shall have original jurisdiction over a civil class action where (i) the amount in controversy aggregated among class members exceeds $5

million, exclusive of interests and costs, and, in relevant part, (ii) at least one member of the alleged class is a citizen of a different state than the Defendant. 28 U.S.C. § 1332(d)(2)(A). Here, the diversity of citizenship requirement is met, as the FAC alleges that Zak is a citizen of Illinois and Bose is a corporation incorporated in Delaware with its principal place of business in Massachusetts. (Compl. ¶¶ 8–9.) With respect to the amount in controversy requirement, Bose argues that with the Wiretap Act claim dismissed, the remaining claims cannot satisfy the $5 million minimum requirement. However, "a district court may not dispose of some claims on the merits, then dismiss the suit for lack of jurisdiction because the remaining claims fall short of the minimum amount in controversy." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011); *see also Johnson v. Wattenbarger*, 361 F.3d 991, 992 (7th Cir. 2004) ("[D]iversity jurisdiction depends on matters as they stand when the complaint is filed . . . . If the complaint as filed puts more than [the minimum amount in controversy floor] at issue, then the district court has jurisdiction and may resolve on the merits every legal theory and aspect of damages."). The Seventh Circuit has explicitly applied this principle to CAFA. *Morrison*, 649 F.3d at 535 (citing *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805 (7th Cir. 2010)).

Thus, the Court must determine if the FAC pleads damages sufficient to meet the $5 million amount in controversy requirement as the case was filed—that is, including the federal Wiretap Act claim. The Court notes that Bose nowhere disputes that the allegations meet this requirement, even though Bose explicitly argues that the allegations do not meet the requirement when damages stemming from the Wiretap Act claim are not considered. (Joint Status Rep. at 2, Dkt. No. 22.) Nevertheless, the Court has an "independent obligation to ensure that [it] do[es] not exceed the scope of [its] jurisdiction, and therefore [] must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v.*

*Shinseki*, 562 U.S. 428, 434 (2011). The FAC alleges that the amount in controversy exceeds $5 million, exclusive of interests and costs. (Compl. ¶ 10.) The FAC also alleges a nationwide class of individuals who purchased certain Bose Wireless Products and installed and used the Bose Connect App. (*Id.* ¶ 43.) With respect to damages, the FAC alleges that class members suffered damages in the amount paid for the purchased Bose Wireless Products, since class members would not have purchased the products had they known the App would collect, transmit, and disclose users' Media Information. (*See, e.g.*, *id*. ¶ 76.) Finally, the FAC alleges that the pair of Bose wireless headphones purchased by Zak costs $350. (*Id.* ¶ 34.) The Court finds that these allegations are sufficient to establish that the amount in controversy exceeds $5 million, exclusive of interest and costs. The Court therefore has subject-matter jurisdiction over the action pursuant to CAFA.

### III. Illinois Eavesdropping Statute

Having determined that the Court has subject-matter jurisdiction over the state law claims, the Court now turns to analyzing those claims on the merits. First, Zak alleges that Bose violated § 5/14-2(a)(3) of the Illinois Eavesdropping Statute, which provides that a person violates the statute when he or she knowingly and intentionally "[i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication. " 720 ILCS 5/14-2(a)(3). A "private electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(e). The act defines

"surreptitious" as "obtained or made by stealth or deceptions, or executed through secrecy or concealment." 720 ILCS 5/14-1(g). The statute provides for civil remedies to injured parties against the eavesdropper, including actual and punitive damages. 720 ILCS 5/14-6.

Zak's state law eavesdropping claim is based on the same alleged conduct as the federal Wiretap Act claim, namely that Bose was not a party to the private electronic communications between users and Spotify, and that Bose intercepted and collected these communications and transmitted them to a third party without users' consent. (Compl. ¶¶ 25, 29, 33, 59–61.) Thus, Zak's Illinois Eavesdropping Statute claim fails for the same reason the federal Wiretap Act claim fails. Like the Wiretap Act, the relevant provision of the Eavesdropping Statute only applies where a person "is not a party" to the private electronic communication. 720 ILCS 5/14-2(a)(3). As discussed above, the FAC does not allege facts to suggest that the App is not a party to the communication, and indeed the facts alleged contradict Zak's conclusory allegation that Bose is not a party. Zak's Opposition Brief further clarifies the FAC's allegations and makes clear that the App is a fully-acknowledged and intended participant in the communication of the Media Information. Zak's Illinois Eavesdropping Statute claim must therefore be dismissed. Like the federal Wiretap Act claim, the Court dismisses the state eavesdropping claim without prejudice in the event that Zak can somehow allege a set of facts to suggest that Bose is not a party to the communication, or that Bose violated a different subsection of the Illinois Eavesdropping Act that applies equally to parties to the communication.

### IV. Illinois Consumer Fraud and Deceptive Practices Act

The Court next considers Zak's claim under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2 *et seq*. The ICFA prohibits "unfair or deceptive acts or practices," including "misrepresentation or the concealment, suppression or omission of any

material fact." 815 ILCS 505/2. To state a claim under the ICFA, a plaintiff must plead: (i) a deceptive act or practice by the defendant; (ii) the defendant's intent that the plaintiff rely on the deception; (iii) the occurrence of the deception in a course of conduct involving trade or commerce; and (iv) actual damage to the plaintiff that is (v) a result of the deception. *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009). The Illinois Supreme Court has clarified that in an ICFA action, "the plaintiff must actually be deceived by a statement or omission," which in turn requires that the plaintiff received some sort of communication from the defendant. *Id.* at 316. In addition, when a deceptive act claim is based on an omission, the omission must be of a material fact. *E.g.*, *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996). "A material fact exists where a buyer of a product would have acted differently if it had known about the allegedly omitted information, or where that information is the kind a buyer would be expected to rely on in deciding whether to purchase the product." *Pappas v. Pella Corp.*, 844 N.E.2d 995, 1001 (Ill. App. 2006) (citing *Connick*, 675 N.E.2d at 594). Deceptive acts or practices must be pleaded with the same particularity and specificity as a common-law fraud claim. *E.g.*, *Connick*, 675 N.E.2d at 593.

The Court finds that Zak has pleaded an ICFA violation sufficient to survive the motion to dismiss stage. The FAC alleges that Bose committed a deceptive act when it omitted and concealed the fact that the App secretly collects its users' Media Information and discloses it to a third-party data miner called Segment.io, then accesses that data and pairs it to user identity information to create detailed profiles about users' listening preferences and habits. (Compl. ¶¶ 22, 24, 27, 28, 33, 38–41.) The FAC's deceptive act allegations include allegations of a communication from Bose—namely advertising on its packaging for Bose Wireless Products as well as on its website encouraging Bose Wireless Product users to download and use the App. (*Id.* ¶¶ 17, 18, 20, 35.) The FAC further alleges that the alleged omission was a material fact: Zak and

class members would not have purchased Bose Wireless Products if they had known that the App, advertised as enhancing and indeed completing the functionality of those products, collected and transmitted their Media Information. (*Id.* ¶¶ 33, 42, 71.) The FAC also alleges that Bose intended consumers to rely on the omission "because it knew that consumers would not otherwise purchase their products." (*Id.* ¶¶ 33, 72.) Finally, the FAC alleges actual damages resulting from the deception—specifically that Bose charged a higher price for its Wireless Products relative to comparable devices, and that Zak and the class members would not have purchased the Bose Wireless Products had they known that Bose would use the App to collect and disclose their Media Information.

      Defendant's arguments in favor of dismissal do not succeed at this stage. First, while Bose disputes that the alleged omission was deceptive and that it was material, these are not issues to resolve on a motion to dismiss. Zak alleges that the omission was deceptive and that it was material because he would not have purchased the headphones but for the omission. This is enough to survive a motion to dismiss. *E.g.*, *Connick,* 675 N.E.2d at 595 (holding that plaintiff adequately pleaded an ICFA violation where the complaint alleged that the defendant was aware of the alleged omission, that the defendant failed to disclose the information, and that the information was material because the plaintiffs would not have purchased the items had defendant disclosed the information); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859 (Ill. App. 1997) (similar). While Bose argues that an alleged omission is actionable under the ICFA only where it is employed as a device to mislead, Zak adequately alleges that the omission at issue was employed in such a manner—that is, Bose omitted the information because it knew consumers would not otherwise purchase the Wireless Products. Whether or not this is factually true a question to be resolved at a later date. Bose also makes much of the fact that the alleged omission

13

is not about the product purchased but rather the free and optional App. But the allegations in the FAC, taken as true and viewed in the light most favorable to Zak, are sufficient to establish that the App was required to access full functionality of the Wireless Products and Bose charged more for the Wireless Products than competitors' products because of the App. In addition, the putative class is limited to Wireless Products purchasers that also downloaded and used the App. This is enough to survive a motion to dismiss.

Finally, Bose argues that Zak did not plead cognizable damages or, in the alternative, does not ascribe a value to the App apart from the headphones. But Zak alleges that he paid $350 for wireless headphones in part because of the App and he would not have purchased the headphones but for the alleged omission regarding the App. Again, this is sufficient at the motion to dismiss stage. *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (in a private ICFA action brought by consumers, "actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'") (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197–98 (Ill. App. 2008)); *McDonnell v. Nature's Way Products, LLC*, No. 16 C 5011, 2017 WL 1149336 (N.D. Ill. March 28, 2017) (plaintiff sufficiently pleaded actual damages where she alleged that "she paid more for the products than they were actually worth and would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sourced vitamins."); *Lipton v. Chattem, Inc.*, No 11 C 2952, 2012 WL 1192083, at *5 (N.D. Ill. Apr. 10, 2012) (collecting cases suggesting that allegations that a plaintiff was injured because she purchased a product that was worth less than she paid for it are sufficient to plead actual damages under Illinois law). Of course, the fact that the FAC has adequately alleged damages does not mean that Zak will be able to prove such damages, but that is an issue properly reserved for summary judgment or trial.

## V. Unjust Enrichment

Zak's final claim is for common law unjust enrichment. In Illinois, to plead unjust enrichment, a plaintiff "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Though Illinois law is unsettled regarding whether or not an unjust enrichment claim must always be tied to another underlying claim sounding in tort or contract or arising under a statute, *see Clearly v. Phillip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011), here, Zak's unjust enrichment claim is based on the same conduct alleged in his ICFA claim and is thus tied to that claim. When such is the case, the unjust enrichment claim therefore will stand or fall with the ICFA claim. *Id.* at 517 ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and of course, unjust enrichment will stand or fall with the related claim."). Thus, because Zak's ICFA claim survives the motion to dismiss, so too does the unjust enrichment claim. *See, e.g.*, *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 894 (N.D. Ill. 2013) (where an unjust enrichment claim was based on an ICFA violation, allegations that the defendant was unjustly enriched by retaining revenues it derived from the plaintiff's purchase and that retention of such revenue was unjust and inequitable were sufficient to state a plausible claim for relief); *Sirazi v. Gen. Mediterranean Holding, SA*, No. 12 C 0653, 2013 WL 812271, at *9 (N.D. Ill. Mar. 5, 2013) ("[A]s Plaintiffs have pleaded a fraud claim that has survived Defendants' motion to dismiss, the court finds no basis to dismiss the unjust enrichment claim."); *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 914 (N.D. Ill. 2011) (the plaintiffs sufficiently stated an unjust enrichment claim where they alleged that the defendants were unjustly enriched

by retaining payments for a product for which they omitted material information that would have altered the consumers' decision to purchase the product).

Bose argues that the claim must be dismissed because Zak failed to allege in a non-conclusory manner what benefits Bose unjustly retained. But Zak alleges that plaintiffs would not have purchased the product had they known that the App collected and disclosed users' Media Information without their knowledge or consent. Zak further alleges that Bose has unjustly retained the benefit of the purchase price to plaintiffs' detriment, and that such retention violates principles of equity and good conscience. (Compl. ¶¶ 80–81.) This is enough at the motion to dismiss stage. Bose also argues that the claim must be dismissed because Zak does not allege that Bose had a duty to act and failed to abide by that duty, citing *Lewis v. Lead Industrial Association*, 793 N.E.2d 869, 877 (Ill. App. 2003). But *Lewis* does not suggest that an independent duty and failure to abide by that duty are elements of an unjust enrichment claim. Rather, in *Lewis*, the plaintiffs brought claims relating to an alleged lead exposure caused by the defendants, and alleged that the defendants were unjustly enriched because they had a duty to pay for lead assessment and screening made necessary by the exposure and had not done so. *Id.* at 876–77. The *Lewis* court dismissed the claim, noting that the plaintiffs had not alleged an independent basis establishing that it was the defendants' duty to pay for the assessment and screening. *Id.* The *Lewis* court's discussion of a duty is thus inapposite here, and Bose's argument that the unjust enrichment claim must be dismissed because Zak failed to allege an independent duty fails.

## CONCLUSION

For the foregoing reasons, Bose's motion to dismiss (Dkt. No. 28) is granted as to Counts I and II of Zak's First Amended Complaint. Those counts are dismissed without prejudice. Bose's motion is denied as to Counts III and IV.

ENTERED:

Dated: March 31, 2019

_____
Andrea R. Wood
United States District Judge